**In re Lance R. SHAFFER and Judith A. Shaffer, Debtors.**

**Eugene GRZESNIKOWSKI, Plaintiff,**

**v.**

**Lance R. SHAFFER and Judith A. Shaffer, Defendants.**

**Bankruptcy No. 87–05675S.**
**Adv. No. 88–1093S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 9, 1988.

As Amended Dec. 6, 1988.

John Francis Murphy, Doylestown, Pa., for debtors.

James J. O'Connell, Ass't. U.S. Trustee, Philadelphia, Pa.

Michael P. Kelly, Langhorne, Pa., for plaintiff.

Richard P. Pearlman, West Chester, Pa., for Borders & Blinebury.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us is a motion filed by EUGENE GRZESNIKOWSKI (hereinafter referred to as "EG"), an individual allegedly owed $47,800.00 as the obligee of an undated

note from the husband-Debtor, LANCE R. SHAFFER (hereinafter "Lance"), executed in or about July, 1984, objecting to the Debtors' proposed change of their exemptions. We shall grant EG's motion because the Debtors did not seek to change their exemptions until after they had claimed and received distribution of $15,000.00 in partial satisfaction of their original claims of exemptions. Irrespective of the acknowledged liberality of allowing debtors to amend their schedules, including changes of claims of exemptions, we believe that the Debtors here, seeking to manipulate their claims of exemptions after a partial distribution according to their original exemptions, have acted too late.

The Debtors filed the instant voluntary joint individual Chapter 11 bankruptcy case on November 12, 1987. They filed their Schedules, including claims for exemptions, on December 17, 1987. On Schedule B–4, they opted to claim exemptions under § 522(b)(1) as set forth in § 522(d) of the Bankruptcy Code. By far, their largest exemption claim represented equity of $15,249.00 in their home, situated at 12 Kratz Lane, Woxall, PA 18979 (hereinafter "the Home"), pursuant to 11 U.S.C. § 522(d)(1).

On March 4, 1988, the Debtors filed a motion to sell the Home free and clear of liens for a price of $185,000.00, and for "other relief." The principal element of "other relief" was immediate distribution of $15,000.00 from the sale proceeds to the Debtors in partial satisfaction of their exemption claims. When the first mortgagee on the Home, Harleysville Savings Association (hereinafter "Harleysville"), withdrew its objection, after assurances that it would be paid forthwith from the proceeds, we entered an Order of April 5, 1988, allowing the sale and directing that, on the date of settlement, the Debtors "shall be paid the sum of $15,000.00 from the proceeds of the sale in partial satisfaction of their exemption claims." Counsel for the Debtors has confirmed that this sum was in fact paid to the Debtors at that time. On May 25, 1988, we entered an order allowing an immediate distribution of $103,184.94, plus certain additional per diem payments, to

Harleysville. A balance which we believe was in excess of $50,000.00 remains.

On May 31, 1988, the Debtors filed a Plan and a Disclosure Statement in their Chapter 11 case which essentially set forth their intentions concerning the distribution of the remainder of the sale proceeds. Therein, the Debtors classified claims against each of them individually separately from claims against both of them jointly. Secured claims which were against only one of them were to be paid ten (10%) percent of their claims, and unsecured claims against only one of them were to receive nothing. Joint claims were, however, to be paid in full. The Plan also provided, regarding exemptions, as follows:

### ARTICLE V. EXEMPTIONS

All real and personal property of the debtors is exempt except to the extent of Class One claims [secured claims against both, which apparently was only Harleysville]. The Debtors hereby change their exemption claim to property exempt under 11 U.S.C. section 522(b)(2).

Clearly, the intention of these amendments was to eliminate or reduce dividends to creditors having claims against only one of the Debtors, which involved several large claims; increase dividends to a number of relatively modest joint creditors remaining after payment to Harleysville; and increase the distribution remaining after payment, which would, pursuant to another Plan provision, revert to the Debtors.

After a hearing of July 6, 1988, we entered an Order approving the Disclosure Statement and fixing August 24, 1988, as the date of the Confirmation hearing. On August 11, 1988, Objections to confirmation were timely filed by EG, based upon the Debtors' alleged improper change of exemptions, and by Robert H. Borders and Gilbert C. Blinebury (hereinafter "B & B"), secured creditors of Lance only, based upon, *inter alia*, alleged improper classification of several of the claims. EG also filed the motion addressed herein on August 11, 1988, alleging that the change in exemptions would reduce his claim from a substantial portion of the remaining pro-

ceeds of about $50,000.00 to nothing. He contended that, had he been able to foresee the Debtors' ultimate treatment of his claim effected, in part, by the change of their exemptions, he would have pressed to establish his claim as a joint claim. EG also filed a Complaint, at Adversary No. 88–1093, challenging the dischargeability of his debt pursuant to 11 U.S.C. § 523(a)(2) on the ground that the Debtors had fraudulently induced him to accept Lance's note, even though the obligation to him was allegedly joint, on the false promise that it would be subsequently replaced by a joint mortgage as security for his loan.

The Confirmation hearing of August 24, 1988, was continued to September 28, 1988. Apparently this was prompted in part by the temporary disappearance of the Debtors, since their counsel, on August 10, 1988, filed a motion against the Social Security Administration, which was vigorously opposed and ultimately withdrawn, seeking to obtain that agency's locator information concerning the Debtors.

Confirmation and the Objections thereto, the above-mentioned Adversary Complaint and a motion to dismiss it filed by the Debtors, and the instant motion all were scheduled on September 28, 1988. We denied the motion to dismiss the adversary proceeding, and, by the agreement of the parties, continued all of these matters until November 2, 1988. In the interim, B & B were granted permission to examine the Debtors pursuant to Bankruptcy Rule (hereinafter "B.Rule") 2004, and EG and the Debtors were directed to brief the motion in issue, there being agreement that the propriety of the Debtors' change of exemptions was the centerpiece of their Plan, which was, in turn, the catalyst of all of the actions of EG and B & B opposing confirmation of same. On October 4, 1988, the Debtors also filed Objections to B & B's Proofs of Claim and these, too, were listed for a hearing on November 2, 1988.

The method for claiming exemptions is set forth in B.Rule 4003. However, that Rule "is silent as to the procedure for amending the list of claimed exemptions"

and hence, as to the procedure for amending exemptions, "reference must be made to Rule 1009, which deals with amendments, petitions, schedules and lists." W. NORTON, BANKRUPTCY LAW AND PRACTICE RULES & OFFICIAL FORMS 248 (1987–88 ed.). The Debtors argue that the holding of *In re Gershenbaum*, 598 F.2d 779, 781 (3d Cir.1979), that a bankruptcy court "does not have discretion to deny leave to amend or to require a showing of good cause" should be carried over to their attempt to change their exemptions.

We note, however, that, while the *Gershenbaum* holding has been applied to requests by debtors to change their exemptions, it is "with the limited caveat that a court might deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors." *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982). *Accord, In re Williamson*, 804 F.2d 1355, 1358 (5th Cir. 1986); and *In re Fisher*, 27 B.R. 71, 73 (Bankr.M.D.Pa.1983). While *Doan* thus articulates a test for allowance of amendments to exemptions which appears, at first blush, only slightly removed for the *Gershenbaum* test for allowance of amendments generally, in fact the change is quite significant. The *Gershenbaum* "test" is absolute, mandating allowance of amendments. The test articulated in *Doan* allows at least some discretion to be exercised by the bankruptcy court in deciding whether to allow a particular change of exemptions.

None of the foregoing cases indicate what circumstances would constitute "bad faith or prejudice to creditors," as the amendments requested were allowed in each of those cases. However, several cases have established that, if a distribution of assets has already been made on the basis of exemptions previously claimed, then it is unfairly prejudicial to creditors, and too late, to change the exemptions. *See In re Hardage*, 69 B.R. 681, 684–85 (Bankr.N.D.Tex.1987) (debtor attempted to claim crops as exemption after they had been sold by the trustee); *In re Eldridge*, 15 B.R. 594, 595 (Bankr.S.D.N.Y.1981) (debtors tried to change exemptions after

the trustee had contracted to sell the house against which debtors had already claimed other exemptions); *In re Houck,* 9 B.R. 460, 463–64 (Bankr.E.D.Mich.1981) (debtors attempted to claim exemptions on bonds after they had delivered them to the trustee); and *In re Santoro,* 3 B.R. 210, 212 (Bankr.E.D.N.Y.1980) (debtors attempted to claim exemptions after the trustee had sold the property in which debtors claimed their exemptions).

Here, there is a threshold question as to whether the Debtors followed the proper procedure in amending their exemptions. They purported to effect the amendments by reciting same in their Plan and Disclosure Statement, without actually amending their "petition, list, schedule, statement of financial affairs, [or] statements of executory contracts" which are the documents which can be amended "as a matter of course at any time before the case is closed" pursuant to B.Rule 1009. Therefore, it is somewhat ironic that the Debtors are relying on cases such as *Gershenbaum,* which specifically relates to amendments to such documents.

However, putting aside this procedural deficiency as substantively irrelevant, we find it highly relevant that the Debtors received a distribution of the greater part of their exemptions under 11 U.S.C. §§ 522(b)(1) and 522(d) before they indicated that they wished to change their exemptions to those allowed under state law pursuant to § 522(b)(2). As EG points out, this is not an insignificant change, but one which will dramatically change the distribution of the sale proceeds to the creditors, to his particular detriment. Had he known of the Debtors' ultimate intentions, EG may have well vigorously pressed a contention that he had a joint claim and may also have opposed the sale of the Home and attempted to block the initial, partial distribution of the proceeds to the Debtors. Therefore, it appears that unfair prejudice to EG resulted as a result of the Debtors' attempt to change their election of exemptions after the sale of the Home and partial distribution of the proceeds to the Debtors had already taken place.

The *Eldridge* case involved, like the instant case, the debtors' attempt to change a claim of exemptions under § 522(b)(1) to a claim under § 522(b)(2). The attempt to change exemptions at that point was disallowed solely because the trustee had contracted to sell a home in which lesser exemptions had previously been claimed. Here, not only has the sale been contracted for, but it has in fact taken place, and a substantial partial distribution has been effected on the basis of the Debtors' original claim of exemptions. The *Eldridge* court, as did the courts in *Hardage, Houck,* and *Santoro,* appeared to find the element of unfair prejudice to arise from the fact that the trustee had already engaged in labors to sell property which he might have foregone had the debtors initially claimed the exemptions which they now sought. This prejudice, it seems to us, rises to a lower level than the deprivation of funds which EG reasonably anticipated would be distributed to him by means of the changes in exemptions sought to be effected here. There is, of course, no trustee here, but a debtor-in-possession (hereinafter "DIP") must perform the duties of a trustee. 11 U.S.C. § 1107(a). These duties require the DIP to act as a fiduciary for the creditors, as would a trustee. *See Wolf v. Weinstein,* 372 U.S. 633, 649, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963). Therefore, the presence of a trustee in this analysis is irrelevant.

No element of actual bad faith on the part of the Debtors was found in either *Eldridge, Hardage, Houck,* or *Santoro.* The debtors there apparently simply overlooked exemptions which they later sought to claim. Here, there is certainly an aura of manipulation, which the Debtors' mysterious disappearance after they received the sale proceeds tends to heighten. Without expressly finding bad faith, we do believe that this is not a situation where the Debtors simply innocently overlooked an element of their exemptions. Rather, it is a sophisticated attempt to effect an exemption-scheme which the Debtors appear to have contemplated from the outset, yet attempted to bring into the picture only at the point where they had $15,000.00 in

hand and the creditors were lulled into a sense of security on the assumption that this was all that the Debtors were going to get out of the distribution of the proceeds of the sale of the Home. Such a scenario is troubling, and contributes to our result. *Compare Payne v. Wood,* 775 F.2d 202, 205 (7th Cir.1985) (permission to amend exemptions said to be "most unlikely" to be permitted where debtors found to be improperly manipulating exemption claims). We have located no case where a change in exemptions has been permitted, over creditors' objections, after a distribution pursuant to the original exemptions has taken place. This case presents a doubtful factual basis for being the first case to do so.

When we announced our intention to render this decision in open court on November 2, 1988, the Debtors recognized that this disposition would send them back to the drawing board to formulate a new Plan and Disclosure Statement, as the change of exemptions was the linchpin of their current formulations. EG allowed that he might withdraw his dischargeability complaint, and B & B and the Debtors their objections to the Plan and claims of the other, respectively, in the event that the Debtors produced a different plan. We therefore indicated an intention to enter an Order taking the form of that entered hereafter.

### ORDER

AND NOW, this 9th day of November, 1988, after a hearing of November 2, 1988, to consider Confirmation of the Debtors' Plan; an Objection of the Plaintiff in the above adversary proceeding to the Debtors' change of exemptions (hereinafter referred to as "the Objection"); Objections of the Debtors to the claims of Robert H. Borders and Gilbert C. Blinebury; and the merits of the above adversary proceeding, it is hereby ORDERED as follows:

1. The Objection is SUSTAINED. The Debtors shall not be allowed to effect the change of their exemptions as contemplated in their Plan.

2. The Debtors shall file an Amended Plan and proposed Disclosure Statement and notify all interested parties of same on or before December 1, 1988.

3. A hearing of the Disclosure Statement and a continued hearing on the Debtors' Objections and the adversary proceeding are scheduled on

WEDNESDAY, JANUARY 11, 1989, at 10:00 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.