In re Francis A. IZZI, Rose Izzi, Debtors.

Bankruptcy No. 95–17319DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 12, 1996.

Arsen Kashkashian, Jr., Bristol, PA, for Debtors.

Harry Aaron Rubin, Philadelphia, PA, for Robert DeLong.

Eazil Vedat and Deanna Aritan, Philadelphia, PA, Creditors pro se.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

The Objection of FRANCIS A. IZZI ("the Husband") and ROSE IZZI ("the Wife," with the Husband, "the Debtors") to the proof of claim filed on behalf of Robert DeLong ("the Claimant") raises several interesting issues regarding the impact of the automatic stay upon a state court action ("the State Action") which the non-debtor Claimant filed and prosecuted, unaware of a pending earlier bankruptcy case until after the State Action was filed. We agree with the Debtors that the discovery of the pending bankruptcy during the State Action rendered it void from its outset, and that a subsequent judgment entered against the Husband, even after the dismissal of the bankruptcy, must be stricken. However, the judgment against the Wife, who was not a debtor in the earlier bankruptcy, remains intact. At this juncture, this result appears to require full payment by the Debtors of the judgment obtained by the Claimant in any confirmable Chapter 13 plan.

## B. FACTUAL AND PROCEDURAL HISTORY

The Debtors filed the instant joint Chapter 13 bankruptcy case on September 19, 1995. The confirmation hearing was initially scheduled on March 14, 1996.

On February 26, 1996, a proof of claim ("the Claim") in the amount of $50,000, classified as secured and based upon a judgment ("the Judgment") entered in that amount in the Philadelphia Court of Common Pleas ("the CCP"), and transferred to Bucks County, the situs of the Debtors' residence, was filed on behalf of the Claimant. On March 18, 1996, the Claimant also filed an Objection to the Debtors' claim of exemptions of their real estate ("the Exemption Objection"). The exemptions in realty, asserted under 11 U.S.C. § 522(d)(1), attempted to take in all of the Debtors' equity in five properties, including their home and four other properties, valued at a total of $560,000 and subject to secured claims disclosed as $34,000 on Schedule C and the Summary, and $307,000 in Schedule A.

On April 18, 1996, the Debtors filed objections to, apparently, only the secured status of the Claim ("the Claim Objection"). The hearing of the Exemption Objection, originally scheduled on April 18, 1996, was continued to May 16, 1996, the date of the scheduled hearing on the Claim Objection, as well as a third continued confirmation hearing, a second continued hearing on the Standing Chapter 13 Trustee's motion to dismiss the case due to infeasibility of the plan ("the TMTD"), and a hearing on objections to another claim.

At the May 16, 1996, proceedings, the Debtors agreed that the Exemption Objection had merit. Accordingly, an order was entered restricting the Debtors' exemptions, under § 522(d)(1), to $30,000 on their residence only. During a colloquy between counsel for the Debtors and the Claimant, it became clear, for the first time, that the Debtors contended that the lien arising from the CCP's judgment was void because the State Action was commenced during the pendency of an earlier Chapter 13 case in which only the Husband was a debtor, Bankruptcy No. 94–16073DAS ("the Husband's Case"). At the Claimant's request, in light of his recent enlightenment, a continuance of the hearing on the Claim Objection, confirmation, and the TMTD were continued to May 23, 1996. The parties were cautioned that the hearing on the Claim Objection would not be continued further, and that, if confirmation were not achieved with an amended plan filed in light of our disposition on the Claim Objection, the TMTD would be granted.

On May 23, 1996, the parties stipulated to the entry of the complete docket entries of the State Action and the Husband's Case into the record. By reference to this evidence,

we ascertain that the Husband's Case was filed on September 14, 1994, and was dismissed without confirmation on March 30, 1995. Further, we learn that the State Action was filed on November 9, 1994. However, it was stipulated that the Claimant had not been listed as a creditor in the Husband's Case and was unaware of its pendency until on or about the time of the Husband's filing of a Suggestion of Bankruptcy in the CCP on January 23, 1995. The docket entries reflect that the State Action resumed after the dismissal of the Husband's Case, with a default judgment of June 21, 1995, being entered against the Husband only. However, on July 26, 1995, an arbitrators' award was entered against both Debtors and damages were assessed against both of the Debtors, jointly and severally, in the amount of $50,000. The only testimony on May 16, 1996, was from the Husband, who vigorously denied the assault upon the Claimant which underlay the State Action, but admitted his criminal conviction of assault based on the same event.

After post-hearing argument, the court entered an Order allowing the parties until June 6, 1996, to simultaneously submit briefs on all issues deemed relevant and indicating that a final confirmation hearing would be fixed with an Order deciding the Claim Objection.

## C. DISCUSSION

■ The Claimant argues that the Judgment against the Husband is merely voidable, not void, citing *In re Siciliano*, 13 F.3d 748 (3d Cir.1994), in support of this principle. He then posits that (1) the inequities effected by the Husband's delay in asserting the automatic stay arising from his bankruptcy case; and (2) the CCP's effective construction of the automatic stay as not invalidated by the State Action, allegedly binding on this court, should result in our sustaining the Judgment's validity, even as to the Husband. The Debtors argue that the Judgment is clearly void as to the Husband, and should likewise be deemed void as to the Wife because of the presence of the codebtor stay or because the allegations against the Wife were allegedly based solely on the theory that the Husband was acting as her agent and hence

the claim against her was akin to that stated against nondebtors on an alter ego theory in *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987).

■ We do not totally agree with the positions of either party. Except for what we believe is an erroneous gloss contained in the key number summaries, 13 F.3d at 748, *Siciliano* does not hold that an action taken in violation of the automatic stay is voidable rather than void. Rather, on this subject, *Siciliano* states, *id.* at 750, only that

> [w]hile [this bankruptcy] court correctly articulated the general principle that any creditor action taken in violation of an automatic stay is void *ab initio, see Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir.1991), we find that the instant case falls within an exception to that rule.

*Maritime Electric, id.* at 1206, distinctly holds that, "[a]bsent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*," even though, in the fact situation before that court, the debtor actively participated in the void state court proceedings. *Id.* at 1201–03. *Accord, Raymark Industries, Inc. v. Lai*, 973 F.2d 1125, 1131 (3d Cir.1992); *In re Ward*, 837 F.2d 124, 126 (3d Cir.1988); and *In re Clark*, 69 B.R. 885, 888–91 (Bankr.E.D.Pa.1987).

■ The "exception" referenced in *Siciliano* is where the creditor seeks to annul the automatic stay, 13 F.3d at 751–52, an issue which this court considered at length on remand. *See In re Siciliano*, 167 B.R. 999, 1006–13 (Bankr.E.D.Pa.1994). This court therein held that the extremely extraordinary circumstances in which annulment of the stay is appropriate include only those instances where the debtor is proven to have intentionally concealed a bankruptcy filing, has engaged in numerous repetitive filings, and/or involves a secured creditor with a clear right to relief from the stay, as in *Siciliano. Id.* at 1007–13. None of these circumstances are proven to be present here. There is no evidence of fraudulent concealment of the bankruptcy by the Husband; the instant case is only apparently his second filing; and the Claimant, at least during the pendency of the Husband's Case, was only an

unsecured creditor. *See In re Metro Transportation Co.,* 82 B.R. 351, 353 (Bankr. E.D.Pa.1988) (unsecured creditors face a difficult task of producing evidence to establish that the balance of hardships tips in their favor in order to obtain relief from the automatic stay).

■ The Claimant also suggests that the CCP had concurrent jurisdiction with this court to grant relief from that automatic stay, citing *In re Franklin,* 179 B.R. 913 (Bankr.E.D.Cal.1995), and that it effectively exercised that jurisdiction in proceeding with the State Action even after it was at least constructively aware that the Husband's Case filing preceded that of the State Action. We disagree with this assertion for two reasons. First, there is no indication that the CCP ever considered and ruled on the effect of the automatic stay arising from the Husband's case. Secondly, this court recently held in *In re Ford,* 188 B.R. 523, 526 (Bankr. E.D.Pa.1995), regarding concurrent jurisdiction of bankruptcy courts and state courts in reference to issues relevant to the effect of the bankruptcy stay, that

> "[r]elief from the [automatic] stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case." *Constitution Bank v. Tubbs,* 68 F.3d 685 [, 691] (3d Cir.1995). *Accord, Gibbs v. Housing Authority of City of New Haven,* 76 B.R. 257, 263 (D.Conn.1983); and *Labat v. Bank of Coweta,* 218 Ga.App. 187, 460 S.E.2d 831, 834 (1995). This rule of law is logical, because no other court should generally interfere with the bankruptcy estate while the bankruptcy case is pending in bankruptcy court and the automatic stay would otherwise remain fully applicable....

*Franklin* does not hold to the contrary. Rather, that court states, 179 B.R. at 925, that

> [a]lthough only the bankruptcy court that has jurisdiction over the bankruptcy estate has the authority to terminate, annul, modify, or condition the automatic stay, 11 U.S.C. § 362(a), "it is settled that both the bankruptcy court and the court in which the other litigation exists may construe the automatic stay." *In re Mahurkar Double*

*Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969, 973 (N.D.Ill.1992) (citing cases) (circuit judge sitting by designation in multi-district litigation); *In re Related Asbestos Cases,* 23 B.R. [523,] at 526–27 ((N.D.Cal.1982) ]....

There is no evidence that the CCP in any way attempted to, or did, "construe" the bankruptcy stay. *Compare Ford, supra,* 188 B.R. at 526 (debtor precluded from invoking bankruptcy court jurisdiction regarding the validity of a purported setoff only because he had thoroughly and conclusively litigated this issue in the state courts).

Therefore, we find that, at least as to the Husband, the State Action was void *ab initio* and could not validly serve as a basis for the entry of the Judgment against him. The fact that the CCP, perhaps unmindful of the presence and effect of the stay, proceeded to enter judgment against the Husband anyway does not affect this result.

■ However, we cannot agree with the Debtor's attempt to extend the impact of the automatic stay arising from the Husband's Case to the Judgment against the Wife. It is true that a Chapter 13 filing does affect a stay as to actions against certain codebtors, pursuant to 11 U.S.C. § 1301(a), which provides as follows:

### § 1301. Stay of action against codebtor

> (a) Except as provided in subsections (b) and © of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of *a consumer debt* of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

> > (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

> > (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title (emphasis added).

■ As emphasized above, the codebtor stay arises only in connection with a "consumer debt," defined in the Bankruptcy Code as "debt incurred by an individual primarily for a personal, family, or household purpose;

..." 11 U.S.C. § 101(8). The underlying indebtedness to the Claimant arises from a tort liability. Such an obligation is clearly not a consumer debt. *See In re Alvarez,* 57 B.R. 65 (Bankr.S.D.Fla.1985) (co-debtor stay does not apply to a tort liability based on automobile negligence). *Cf. In re Dye,* 190 B.R. 566 (Bankr.N.D.Ill.1995) (co-debtor stay does not apply to a tax debt); *In re Greene,* 157 B.R. 496 (Bankr.S.D.Ga.1993) (same); and *In re Stein,* 18 B.R. 768 (Bankr.S.D.Ohio 1982) (debt arising from financing operation is not within the scope of the codebtor stay).

Perhaps recognizing the weakness of this argument, despite its vigorous assertion by the Debtors' counsel at the close of the hearing on May 23, 1996, upon closer review of § 1301(a)(1), the Debtors revert to a novel argument based upon *S.I. Acquisition, supra.* They state that the Judgment against the Wife allows the Claimant to reach the Husband's assets and that

> action against nonbankrupts asserting their liability for claim against debtor because debtor was their alter ego is subject to automatic stay because alter ego claim is property of bankrupt estate, which could be made available to satisfy the claims of all creditors.

Debtor [sic] Memorandum of Law to Void Complaint filed by Robert DeLong on November 4, 1994 Against Frank Izzi and Rose Izzi, at 3–4 [pidgin English in original].

While the precise argument raised by the Debtors on this point is unclear from the foregoing quote, we take it to mean that the Debtors are suggesting that the liability of the Wife is in some way comparable to that of the nondebtors as to which an alter ego claim was asserted in *S.I. Acquisition.* The analogy is unclear, as the record contains very little evidence of what actions of the Husband or the Wife triggered the underlying tort. By no means have the vigorous criteria for establishing the existence of a valid alter ego claim as between the Husband and the Wife been proven. *See, e.g., In re Rosco Investors, L.P.,* 1996 WL 107503, at *7 (Bankr.E.D.Pa. March 6, 1996) (a plaintiff asserting an alter ego claim must prove that

the dependent entity is a mere instrumentality of the owner; injustice or fraud would result if the alter ego claim were not recognized; and the inequities from concealing the true owner damaged the party asserting the alter ego claim).

It is well-established that, under 11 U.S.C. § 105(a), the automatic stay may be extended to nondebtors in extraordinary circumstances. *See, e.g., In re Delaware River Stevedores, Inc.,* 129 B.R. 38, 42 (Bankr. E.D.Pa.1991) (the party seeking to so extend the stay must show imminent harm to debtor's ability to reorganize, a reasonable likelihood of reorganization, balance of harms in favor of relief, and service of the public interest thereby). None of these criteria are proven on the instant record. More importantly, no effort was made to assert any such claims under § 105(a) at the time that the Husband's Case was pending. It is difficult to see how any relief under § 105(a) could be granted retroactively to the Wife as the result of the Husband's Case at this point.

There is, then, no basis to extend the automatic stay arising from the Husband's Case to the tort liability of the Wife arising from the State Action. The Wife has shown no basis by which this court can refrain from applying principles of *res judicata* as to the Claimant's assertions against the Wife. *See In re Garafano,* 99 B.R. 624, 629–34 (Bankr. E.D.Pa.1989). *Accord, e.g., In re Kovalchick,* 175 B.R. 863, 871–73 (Bankr.E.D.Pa.1994). Therefore, while we are prepared to sustain the Debtors' Claim Objection as to the Husband in the absence of evidence regarding the merits of the Claim itself, *see, e.g., In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3d Cir.1992), we are not prepared to do so as to the Wife, on the grounds of *res judicata.*

Unfortunately, for the Debtors, the practical effect of our overruling their Objection to the Claim as to the Wife is in and of itself quite significant. Since the Debtors schedule non-exempt real estate valued at greater than $500,000 and debts less than $150,000, they are obliged, by effect of 11 U.S.C. § 1325(a)(4), to pay all of the debts of both of them in full to achieve plan confirmation.[1]

---

1. The Debtors could attempt to avoid this result   by amending their exemptions to claim the state

Moreover, since the Debtors delayed in filing the Objection until the confirmation hearing had already been continued twice, we are not prepared to give them a great deal of additional time to consider their future options. We will order that they file and serve any amended plan and any further amendments or pleadings by June 28, 1996, listing a final confirmation hearing and hearings on the TMTD and hearings on any further filings made on August 1, 1996.

### D. CONCLUSION

An Order memorializing the foregoing conclusions follows.

### ORDER

AND NOW, this 12th day of June, 1996, after a hearing on the Objection ("the Objection") of FRANCIS A. IZZI ("the Husband") and ROSE IZZI ("the Wife," with the Husband, "the Debtors") to the Proof of Claim of Robert DeLong on May 23, 1996, at which time a fourth continued Confirmation hearing and a third continued hearing on the Trustee's Motion to Dismiss because of payments were also scheduled in this case, and upon consideration of the parties' respective post-hearing submissions, it is hereby ORDERED AND DECREED as follows:

1. The Objections are SUSTAINED as to the Husband on this record, without prejudice, but are OVERRULED as to the Wife.

2. The Debtors shall resolve all outstanding impediments to Confirmation, either through the filing of an Amended Plan consistent with paragraph one of this Order, or by some other means before the next listing, or this case will be dismissed.

3. Any Amended Plan and/or any further motions or filings necessary to achieve confirmation shall be filed and served upon all interested parties on or before June 28, 1996.

4. A final hearing on Confirmation, the Trustee's Motion to Dismiss, and on any further motions or filings by the Debtors in accordance with paragraph 3 *supra*, shall be held on

THURSDAY, AUGUST 1, 1996, AT 9:30 A.M. and shall be held in Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, Pa. 19106.

5. No further continuances shall be granted in this case, and it will be dismissed on August 1, 1996, if a Plan cannot be confirmed on that date.

exemptions under 11 U.S.C. § 522(b)(2) and exempting their entireties' property from the debt of only the Wife. However, it may be too late to attempt such amendments. *See In re Shaffer*, 92 B.R. 632 (Bankr.E.D.Pa.1988), aff'd, C.A. No. 88–9742 (E.D.Pa. April 10, 1989). Also, there may be little gained from any such amendments, because the Husband may also be ultimately found liable for the Claim on reconsideration under Federal Rule of Bankruptcy Procedure 3008, either on a fuller record based on principles of collateral estoppel or from a hearing on the merits in District Court. *See* 28 U.S.C. § 157(b)(5).