In the Matter of Frank IZZI.

Civil Action No. 03–2269.

United States District Court,
E.D. Pennsylvania.

July 30, 2003.

James P. McGarrity, David N. Rubin, Philadelphia, PA, for Appellant.

Francis J. Sullivan, Sullivan & Sullivan, PC, Langhorne, PA, for Debtor–in–Possess.

## MEMORANDUM OPINION

RUFE, District Judge.

Presently before the Court is an appeal from an Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") dated March 7, 2003. Appellant is the Executor of the Estate of Robert DeLong, and appellee is Frank Scott, formerly known as Francis Izzi. For the reasons set out below, this Court will reverse and remand for further proceedings consistent with this Memorandum Opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following is taken largely from the parties' Joint Statement of Stipulated Facts, which they submitted to the Bankruptcy Court for purposes of the motions below. On September 14, 1994, Francis Izzi ("the Debtor") filed a Chapter 13 Petition in his name alone (the "First Bankrupcty"). On November 9, 1994, during the pendency of the First Bankruptcy, Robert DeLong filed a civil tort action in the Philadelphia Court of Common Pleas (the "State Action") against the Debtor and his wife, Rose Izzi ("Debtor's Wife"). The State Action requested compensatory and punitive damages arising out of his conviction of assault and possession of an instrument of crime for an attack on Robert DeLong. The Debtor unsuccessfully appealed his conviction to the Superior Court of Pennsylvania.

On January 23, 1995, the Debtor filed a Suggestion of Bankruptcy in the State Action, and Debtor's Wife filed an Answer. On March 30, 1995, the Debtor's First Bankruptcy was dismissed without confirmation.

On June 21, 1995, a default judgment was entered against the Debtor in the State Action (the "Judgment"), and on July 26, 1995, an Arbitrator's Award was entered in the State Action against both the Debtor and the Debtor's Wife, assessing damages jointly and severally in the amount of $50,000. On August 7, 1995, the Debtor filed a Petition to Open Judgment in the State Action, based at least in part on the Debtor's Suggestion of Bankruptcy. The Petition was denied without a written opinion in a September 25, 1995 court order.

On September 19, 1995, the Debtor and the Debtor's Wife filed a joint Chapter 13 Petition in the Bankruptcy Court (the "Second Bankruptcy"), but did not list Robert DeLong as a creditor. On February 26, 1996, Robert DeLong filed a proof of claim in the Second Bankruptcy in the amount of $50,000 based upon the Judgment entered in the State Action, and thereafter on March 18, 1996 filed an objection to the Debtor's exemptions. Finally, the Debtor filed an objection to the secured status of the DeLong claim on April 18, 1996. The Bankruptcy Court held a hearing on this latter objection on May 23, 1996, then Chief Judge David A. Scholl presiding.

Judge Scholl entered an Order on June 12, 1996 sustaining the Debtor's objection to the proof of claim as to the Debtor, but overruling the objection as to the Debtor's Wife. *In re Izzi*, 196 B.R. 727 (Bankr. E.D.Pa.1996) (the "1996 Opinion"). Citing the automatic stay provision found at 11 U.S.C. § 362, Judge Scholl held that the State Action was *void ab initio* as to the Debtor, and that it could not validly serve as a basis for the Judgment entered against him. *Id.* at 730. As to the Debtor's Wife, however, Judge Scholl found no basis for extending the automatic stay to the Judgment entered against her. Therefore, Judge Scholl overruled the objection as to the Debtor's Wife, but sustained the objection as to the Debtor "on this record,

without prejudice." *Id.* at 732. In addition, Judge Scholl ordered the Debtor and the Debtor's Wife to resolve all outstanding impediments to plan confirmation, or the Second Bankruptcy would be dismissed. *Id.* On August 1, 1996, the Second Bankruptcy was in fact dismissed without confirmation.

On September 10, 1996, Robert DeLong continued his efforts to collect on the Judgment by filing a Certification of Judgment against the Debtor and the Debtor's Wife from the Philadelphia Court of Common Pleas to the Bucks County Court of Common Pleas, the county where the Debtor's home is located. On October 31, 1996, the Debtor filed his third Chapter 13 Petition individually (the "Third Bankruptcy"). The Debtor did not list Robert DeLong as a creditor. On May 6, 1997, the Debtor obtained confirmation of his Chapter 13 Plan in the Third Bankruptcy.

On February 4, 1998, Robert DeLong died, and David N. Rubin, Esquire was appointed executor of his estate.[1] On July 24, 2000, the Estate of Robert DeLong (the "Estate") filed a Praecipe for Writ of Revival in the Philadelphia Court of Common Pleas based on the State Action, and the Estate received a revived judgment in the amount of $65,000 on November 10, 2000. On November 17, 2000, a Writ of Attachment was issued against the Debtor's personal property. On December 1, 2000 the Debtor filed a Suggestion of Bankruptcy in the State Action, and a garnishment proceeding against the Debtor's personal property and levy were released by the Estate.

On January 18, 2001, the Estate filed a secured proof of claim in the Third Bankrupcty in the amount of $53,000. On October 19, 2001, the Debtor filed a Motion to Declare Judgment Void and Hold

Creditor in Civil Contempt, and the Estate filed an answer on November 13, 2001. The parties stipulated that the Debtor had completed all of the payments required in the confirmed Plan in the Third Bankruptcy, which did not include the Estate's claim based on the Judgment in the State Action.

The Honorable Kevin J. Carey of the Bankruptcy Court resolved the Debtor's motion in a March 7, 2003 Memorandum and Order that is the subject of the instant appeal. Therein Judge Carey reopened the Debtor's Third Bankruptcy solely for the purpose of considering the motion presented, and decreed that any judgment against the Debtor or his property obtained by Robert DeLong (or later by the Estate) arising from the State Action was void as to the Debtor. He ordered the prothonotaries of both Philadelphia and Bucks counties to mark as stricken any judgment lien against the Debtor arising from the State Action. This appeal followed. The Court has jurisdiction under 28 U.S.C. § 158(a).

## II. *STANDARD OF REVIEW*

A district court, sitting as an appellate tribunal, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. Findings of fact shall not be set aside unless clearly erroneous, but conclusions of law are subject to *de novo* review. *Id.; see also In re Brown,* 951 F.2d 564, 567 (3d Cir.1991).

The Court can affirm the correct decision of a lower court on grounds different than those relied upon by that court. *Narin v. Lower Merion Sch. Dist.,* 206 F.3d 323, 333 n. 8 (3d Cir.2000). It is also settled that the Court can affirm on any

---

1. Apparently, the Debtor's Wife also died, although no date is provided.

basis for which it finds support on the record. *Bernitsky v. United States,* 620 F.2d 948, 950 (3d Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

## III. DISCUSSION

The Estate ascribes the following three errors to Judge Carey's opinion: (1) declining to reach issues raised by the Estate on the basis of issue preclusion; (2) declining to consider whether the Debtor and the Debtor's Wife, by entering an appearance in the State Action after the First Bankruptcy was dismissed, waived all "jurisdictional defects" flowing from the automatic stay; and (3) abusing its discretion by "granting the requested relief to a debtor who flagrantly and wrongfully abused the provisions of the Bankruptcy Code in an attempt to improperly avoid payment to the Estate." These arguments are discussed in detail below.[2]

### A. Issue Preclusion

■■ The Estate contends that Judge Carey erred when he declined to address the merits of its request to annul the stay imposed by the First Bankruptcy or to consider the validity of the State Court Judgment. Judge Carey ruled that Judge Scholl had already decided this issue in the 1996 Order, and thus the doctrine of issue preclusion barred review. In doing so Judge Carey applied the four prong test set out in *In re Docteroff,* 133 F.3d 210, 214 (3d Cir.1997), and found each element satisfied. As stated by the Third Circuit

in *Docteroff,* a party seeking to invoke issue preclusion must show:

> (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*Id.* The Estate contends that Judge Carey erred in applying the third factor, and argues that Judge Scholl's 1996 Order was not, in fact, "a valid and final judgment." This Court agrees.

First, the text of Judge Scholl's opinion shows that it was not a "final" judgment. In paragraph one of his Order, he wrote, "The Objections are SUSTAINED as to the Husband *on this record, without prejudice,* but are OVERRULED as to the Wife." *Izzi,* 196 B.R. at 732 (italics added). These five italicized words are critical to this issue; the latter two have independent legal meaning, while scrutiny of Judge Scholl's opinion gives significance to the former three.

The Supreme Court analyzed the legal significance of a "dismissal without prejudice" in *Semtek International Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (holding that where a court sitting in diversity dismisses a claim on state substantive law grounds, the preclusive effect of the judgment is measured not by Fed.R.Civ.P. 41(b), but by the preclusion law of the state in which the court sits). There, as part of its analysis of Rule 41(b)'s phrase, "adjudication on the merits,"[3] the Supreme Court contrast-

---

**2.** The Estate argued below that the 1996 Order was undone upon dismissal of the Second Bankruptcy, thereby reinstating the Judgment obtained in the State Action. Judge Carey rejected this argument, and the Estate does not appeal that portion of Judge Carey's decision.

**3.** Rule 41(b) provides:

> Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for

ed that phrase with Rule 41(a)(1)'s "without prejudice," [4] and concluded:

> The primary meaning of "dismissal without prejudice," we think, is dismissal without barring the defendant from returning later, to the same court, with the same underlying claim. That will also ordinarily (though not always) have the consequences of not barring the claim from *other* courts, but its primary meaning relates to the dismissing court itself.

*Id.* at 505, 121 S.Ct. 1021. This statement goes very clearly to the situation presently before this Court. Looking to Judge Scholl's 1996 Order, which overruled the Estate's objections "on this record, without prejudice," the Court can only conclude that it was not intended to be a final judgment. Rather, Judge Scholl clearly anticipated that the Estate would return to his court, or to the district court, and press the same issue on a more developed record.

Turning to the body of the 1996 Order, Judge Scholl noted four times that the Estate's arguments failed, at least in part, because of a lack of evidence in the record. *See Izzi,* 196 B.R. at 729 ("There is no evidence of fraudulent concealment of the bankruptcy of the Husband."); *id.* at 730 ("there is no indication that the [Court of Common Pleas] ever considered and ruled on the effect of the automatic stay arising from the Husband's case."); *id.* ("There is no evidence that the [Court of Common Pleas] in any way attempted to, or did, 'construe' the bankruptcy stay."); *id.* at 731 ("The analogy is unclear, as the record

contains very little evidence of what actions of the Husband or Wife triggered the underlying tort."). Second, Judge Scholl couched his ultimate determination as to Mr. Izzi's claim objection accordingly: "[W]e are prepared to sustain the Debtor's Claim Objection as to the Husband *in the absence of evidence regarding the merits of the Claim itself.* ..." *Id.* (emphasis added). Finally, Judge Scholl offered some parting advice to the Debtor and the Debtor's Wife, whose bankruptcy plan at that point had not been confirmed. As part of his analysis, Judge Scholl concluded that "the practical effect" of overruling Mrs. Izzi's objection to the claim required that both Mr. and Mrs. Izzi must pay "all of the debts of both of them in full to achieve plan confirmation." *Id.* Immediately following this sentence, Judge Scholl dropped the following footnote:

> The Debtors could attempt to avoid this result by amending their exemptions to claim the state exemptions under 11 U.S.C. § 522(b)(2) and exempting their entireties' property from the debt of only the Wife. However, it may be too late to attempt such amendments. *See In re Shaffer,* 92 B.R. 632 (Bankr. E.D.Pa.1988), aff'd C.A. No. 88–9742 (E.D.Pa. Apr. 10, 1989). *Also, there may be little gained from any such amendments, because the Husband may also be ultimately found liable for the Claim on reconsideration under Federal Rule of Bankruptcy Procedure 3008, either on a fuller record based on principles of collateral estoppel or from a*

dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

4. Rule 41(a)(1) provides, in pertinent part:

Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

*hearing on the merits in District Court. See* 28 U.S.C. § 157(b)(5).[5]

*Id.* at 731 n. 1. (emphasis added). The italicized language quoted here, taken together with his Order overruling the objections to the claim "on this record, without prejudice," clearly demonstrates that Judge Scholl did not intend his opinion to be the final word on the Estate's claim. Rather, he fully anticipated, and perhaps even encouraged, a motion for reconsideration. In fact, the Estate did file such a motion, but it was never ruled upon because the Second Bankruptcy was dismissed without confirmation on August 1, 1996.

That Judge Scholl's order was not a "final judgment" is further underscored by the Third Circuit's application of the concept in *Docteroff*, 133 F.3d 210. In that case the court addressed whether a default judgment on the issue of liability entered against a defendant in a fraud action as a sanction for the defendant's repeated and bad faith refusals to comply with discovery requests collaterally estopped the defendant from claiming in his subsequent bankruptcy that the debt underlying the judgment was dischargeable. *See id.* at 212–13. In analyzing the collateral estoppel issue, known by its modern nomenclature of "issue preclusion," *see In re Continental Airlines*, 279 F.3d 226, 232 (3d Cir.2002), the *Docteroff* court analyzed whether the default judgment met the finality requirement. 133 F.3d at 215–16. It said that "for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is deter-

mined to be sufficiently firm to be accorded conclusive effect." *Id.* at 216 (quoting *Restatement (Second) of Judgments* § 13 (1982)).

In concluding that the default judgment was final, the *Docteroff* court considered the following aspects of the rendering court's decision:

> Indeed, there is nothing which would even suggest that that court has any intention of revisiting the issue of liability, that its findings are unreliable, that Docteroff did not have sufficient opportunity to be heard before the court entered judgment, or that the Washington court gave insufficient consideration to the issue of liability.
>
> . . .
>
> Second, Docteroff, himself—and no one else—prevented the judgment from becoming final. By filing a Chapter 11 bankruptcy petition and invoking the automatic stay, he prevented the district court from holding a trial on damages and entering final judgment. Permitting him to relitigate the issue in light of his original rejection of a full and fair opportunity to litigate would implicitly endorse his abuse of the judicial process.

*Id.* Considering all of Judge Scholl's 1996 Order, and in light of the above analysis, the Court is of the opinion that the 1996 Order is not sufficiently firm to be accorded conclusive effect. As discussed above, Judge Scholl's opinion evinces quite clearly that he expected to revisit the issue upon a more extensive record. Moreover, unlike the case in *Docteroff*, here it was the ac-

---

**5.** In support of his contention that this opinion is a "final judgment," the Debtor argues that here Judge Scholl was merely advising the Estate to seek "alternate remedies," including "an Appeal to District Court." [sic] However, if Judge Scholl was recommending an appeal to the district court, he would have cited to 28 U.S.C. § 158(a)(1) (district courts have jurisdiction to hear appeals from final judgments of bankruptcy courts). By citing 28 U.S.C. § 157(b)(5), which governs venue for tort claims related to a pending bankruptcy, Judge Scholl was perhaps suggesting an alternative route in which to develop the "fuller record" he apparently anticipated in his footnote. *Izzi*, 196 B.R. at 731 n. 1.

tions of the party benefitting from an estoppel (the Debtors), not the actions of the party prejudiced by an estoppel (the Estate), that prevented the judgment from becoming final. When the Debtors failed to file an Amended Plan capable of achieving confirmation, the Estate's motion for reconsideration became moot, thereby depriving the Estate of the opportunity to present Judge Scholl with the "fuller record" he anticipated. *Izzi*, 196 B.R. at 731 n. 1.

For these reasons, Judge Scholl's 1996 Order was not a "final judgment" for purposes of the doctrine of issue preclusion. Therefore, the Court finds that it was error for Judge Carey to invoke the doctrine and decline to address the Estate's argument regarding annulment of the stay in the First Bankruptcy.

██ The Estate argues that the facts of this case warrant annulling the stay imposed in the First Bankruptcy, thus retroactively validating the Judgment in State Action. Although the Bankruptcy Code clearly empowers courts to "grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay," 11 U.S.C. § 362(d), what showing suffices is determined by the totality of the circumstances in each particular case. *In re Wilson*, 116 F.3d 87, 90 (3d Cir.1997). The Bankruptcy Code also provides that such a determination shall be made on request of a party and after notice and a hearing. 11 U.S.C. § 362(d). The Estate alleges serious misconduct by the Debtor, even going so far as to allege fraud. However, in light of the dearth of evidence in the record regarding some of the Estate's allegations, this Court is not prepared to determine whether annulment or other relief from the stay is warranted. Accordingly, the Court will remand this case so that the Bankruptcy Court may further

develop the record, and address the Estate's argument in accordance with § 362(d) and today's decision.

## B. Debtor's Appearance in the State Action

The Estate argues that Judge Carey erred when he declined to consider whether the Debtor's appearance and motion to open the Judgment in the State Action after the First Bankruptcy was dismissed "waived all jurisdictional defects and validated the judgment." Br. of Appellant at 8. Judge Carey summarily dismissed this argument, reasoning that because the Debtor's motion to open the judgment in state court occurred prior to the 1996 Order, it does not alter the 1996 Order's conclusion that the Judgment was void.

██ The Estate presses upon the Court a creative argument, reaching to Pennsylvania state court decisions unrelated to bankruptcy and into the federal court's "bootstrap principle" in an attempt to validate the Judgment in the State Action. *See, e.g., United States v. United Mine Workers*, 330 U.S. 258, 289–95, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (explaining bootstrap principle); *Grezwich v. Green*, 162 Pa.Super. 139, 56 A.2d 308, 310 (1948) (moving to open judgment before moving to strike results in waiver of "all mere formal defects in the writ, and the manner of service, and to have submitted to the jurisdiction of the court"). However, the Third Circuit has stated the law in this area quite plainly: "The automatic stay cannot be waived." *Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir.1995). *See also In re Vierkant*, 240 B.R. 317, 320 (8th Cir. BAP 1999) (same); *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir.1986) ("Since the purpose of the stay is to protect creditors as well as

the debtor, the debtor may not waive the automatic stay."). In light of this clear statement of the law, the Court must reject the Estate's argument out of hand, and will affirm the Bankruptcy Court's decision. *See Narin,* 206 F.3d at 333 n. 8 (appellate court may affirm on grounds not relied upon below).

### C. The Debtor's Wrongful Conduct

Finally, the Estate alleges a series of alleged misconduct by the Debtor, and argues that such misconduct warrants estopping the Debtor "from improperly using the Bankruptcy Court to avoid the debt." Br. of Appellant at 12. Alternatively, it argues that the Court should find that the Debtor waived any objection to the Estate's claim by failing to raise them "at the proper point in the bankruptcy case."[6] *Id.* at 14. Here, the Estate fails to enunciate a coherent argument for reversing the Bankruptcy Court, relying instead on generalized allegations of wrongdoing. While the matters raised by the Estate may be relevant on remand when the Bankruptcy Court considers whether to grant some form of relief from the automatic stay, *see supra* at Part III.A, they have no bearing on today's decision.

An appropriate Order follows.

---

**6.** The Estate does not elaborate on this highly    ambiguous argument.