OPINION OF THE COURT
 

 ROSENN, Circuit Judge.
 

 In this case, we must decide whether a default judgment entered against a defendant in a fraud action as a sanction for the defendant’s repeated and. bad-faith refusals
 
 *213
 
 to comply with discovery requests collaterally estops the defendant from claiming that the debt underlying the judgment is dis-chargeable in bankruptcy. The United States District Court for the District of New Jersey and the bankruptcy court held that collateral estoppel applied. We affirm.
 

 I.
 

 On May 25,1989, the Burger Boat Company, Inc. (“Burger”) agreed to custom build a 105-foot luxury yacht for Bert L. Wolstein to be delivered to Wolstein in August 1990 for a purchase price of approximately $4.5 million. The yacht was to be called the Lady Iris. Pursuant to the terms of the agreement, Wolstein received a security interest in the yacht while it was under construction. Burger required Wolstein to make payments billed by Burger as the construction of the yacht proceeded. These progress payments were to be used to construct the yacht. Construction of the yacht commenced.
 

 In March 1989, Tacoma Boatbuilding Company (“Tacoma”), in a leveraged buy out, purchased Burger for $3 million in cash to be paid prior to the sale’s' closing and a $1 million promissory note. The debtor in this case, Norman Docteroff, is a director and officer of Tacoma. Tacoma established United Shipbuilding of America, Inc. (“USA”), a holding company which would own the Burger capital stock following the purchase. Thus, there was a direct corporate link between Tacoma, USA, and Burger. USA had no revenues or operations and merely owned the Burger capital stock. In order to complete the purchase, Docteroff and an associate, Manuel Charach, loaned $3 million to USA which USA used to pay the cash portion of the Burger sale price. USA agreed to repay the $3 million to Docteroff and Charach in monthly payments over the next five years. Between July 1989 and January 1990, Docteroff and Charach loaned USA an additional $2.8 million. To secure the loan of this money to USA, Docteroff obtained a security interest in all of Burger’s assets, a pledge of USA’s Burger stock, and a mortgage on some of Burger’s real property. USA’s payments to Docteroff and Charach amounted to approximately $70,000 per month.
 

 Eventually, USA became unable to pay the monthly debt payments to Docteroff and Charach. To keep the money flowing to him, Docteroff and others diverted Wolstein’s progress payments from Burger to USA. USA then used those moneys to make the monthly debt payments to Docteroff. Doc-teroff did not disclose to Wolstein that the progress payments were not being used to pay for expenses associated with the construction of the Lady Iris, that the payments were being used to repay USA’s debt to Docteroff, and that the diversion of the payments caused Burger to be unable to meet its obligation to build the Lady Iris.
 

 In November 1990, Burger ceased operations, including its work on the Lady Iris. Wolstein and a corporation he formed, Lady Iris Corp., foreclosed on his security interest in the partially completed yacht, and formed another corporation, Manitowoc Boat Works, Inc., for the purpose of completing the Lady Iris construction. Ultimately, Wolstein built the yacht, but at a much greater expense than the one on which he and Burger agreed. On May 20, 1993, Wolstein and Lady Iris Corp. filed suit in the United States District Court for the Western District of Washington, alleging that Docteroff and several others defrauded him by, among other things, failing to disclose that his progress payments were being improperly diverted to pay the debt owing to Docteroff, the ultimate effect of which was to shut down Burger’s operations. Docteroff filed an answer denying that he defrauded Wolstein. He also noticed Wolstein’s deposition.
 

 In the months following the filing of the complaint in the Washington case, Docteroff repeatedly and in bad faith refused to submit to properly noticed depositions or respond to numerous legitimate requests for the production of documents despite court orders and warnings. The district court found that Doc-teroff s “non-compliance with discovery rules and Court orders was the product of willfulness and bad faith.”
 
 Wolstein v. Bernardin,
 
 159 F.R.D. 546, 552 (W.D.Wash.1994). As a sanction for Doeteroffs improper conduct, pursuant to Federal Rule of Civil Procedure
 
 *214
 
 37(d), the district court entered default judgment against him on the issue of liability and scheduled trial on damages.
 
 See
 
 159 F.R.D. at 553. Docteroff concedes that the effect of the court’s order was to make him “hable to [Wolstein and Lady Iris, Corp.] as pled in the complaint.” On the day the trial was scheduled to begin, Docteroff filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey, which, because of the automatic stay,
 
 see
 
 11 U.S.C. § 362(a)(1), had the effect of preventing the trial on damages'.
 

 The plaintiffs then filed this adversary action against Docteroff in the New Jersey bankruptcy case. They alleged that the Washington court’s order entering default judgment against Docteroff collaterally es-topped Docteroff from denying that he had defrauded and embezzled money from them in connection with the yacht construction contract. The plaintiffs also contended in the adversary action complaint that because Docteroff incurred the debt by fraud, embezzlement, and willful injury, it was not dis-chargeable in bankruptcy pursuant to, among other provisions, 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).
 

 On cross-motions for summary judgment, the bankruptcy court entered judgment for the plaintiffs, holding that the debt'was not dischargeable. The court found that the Washington court’s order had collateral es-toppel effect and that the allegations in the Washington complaint established that, by his actions in connection with the aborted construction of the Lady Iris, Docteroff engaged in fraud, embezzlement, and fraud while acting in a fiduciary capacity, and caused Wolstein willful and malicious injury. The district court affirmed.
 
 [1]
 
 We exercise plenary review over the district court’s order which affirmed the bankruptcy court’s decision to enter summary judgment for Wol-stein.
 
 In re Continental Airlines,
 
 125 F.3d 120, 128 (3d Cir.1997);
 
 accord In re Engel,
 
 124 F.3d 567, 571 (3d Cir.1997).
 

 II.
 

 Docteroff argues that the district and bankruptcy courts erred by giving the Washington court’s order collateral estoppel effect. In the alternative, he contends that the plaintiffs’ adversary complaint failed properly to allege a cause of action or did not comply with the pleading requirement that allegations of fraud be pled with particularity.
 
 See
 
 Fed.R.Civ.P. 9(b). His arguments are without merit.
 

 A.
 

 Collateral estoppel prohibits the re-litigation of issues that have been adjudicated in a prior lawsuit. The principles of collateral estoppel apply in discharge proceedings in bankruptcy court.
 
 See Grogan v. Garner,
 
 498 U.S. 279, 284-85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991);
 
 In re McNallen,
 
 62 F.3d 619, 624 (4th Cir.1995). Because the prior judgment was rendered by a federal court, we apply federal principles of collateral estoppel.
 
 See Heiser v. Woodruff,
 
 327 U.S. 726, 732, 66 S.Ct. 853, 855-56, 90 L.Ed. 970 (1945);
 
 see also Grogan,
 
 498 U.S. at 284, 111 S.Ct. at 658 (citing Restatement (Second) Judgments § 27 (1982) as establishing elements of federal collateral estoppel). For a party to be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.
 
 In re Ross,
 
 602 F.2d 604, 608 (3rd Cir.1979);
 
 accord
 
 Restatement (Second) Judgments § 27 (1982). Docteroff argues that none of these elements are met here.
 

 His argument regarding the first and fourth elements of the test rests on his conclusion that the actual
 
 dischargeability
 
 of the debt was not at issue in the previous lawsuit. Docteroff for that reason argues that he is not estopped from claiming that the debt is
 
 *215
 
 dischargeable in bankruptcy because the dis-chargeability issue is not the same issue as the one previously litigated and, thus, could not have been essential to the earlier judgment. Docteroffs argument has no merit. Of course, dischargeability was not at issue in the previous lawsuit. That is not controlling, however, because the plaintiffs only seek to estop Docteroff from asserting certain facts,
 
 i.e.,
 
 claiming that he did not obtain money from them by
 
 fraud, embezzlement or willful injury.
 
 Collateral estoppel is applicable if the facts established by the previous judgment in the Washington court that the progress payments were obtained by fraud, embezzlement, and willfully injurious conduct, meet the requirements of nondischarge-ability listed in 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6), namely that the money was obtained by fraud, embezzlement, or willful conduct.
 
 See In re Halpern,
 
 810 F.2d 1061, 1064 (11th Cir.1987) (bankruptcy court makes ultimate determination regarding debt’s dischargeability; collateral estoppel permits court to accept facts established by previous judgment as evidence of nondis-chargeability);
 
 In re Martin,
 
 130 B.R. 930, 942 (Bankr.N.D.Ill.1991) (collateral estoppel may be invoked to foreclose relitigation of facts underlying dischargeability determination). As discussed below, all of the elements of the relevant dischargeability provisions are encompassed by the allegations made in the complaint underlying the Washington court’s judgment. Taking Docteroffs argument to its logical conclusion, collateral estoppel would never apply in bankruptcy because the precise bankruptcy issue would never have been litigated in a court action prior to the filing of the petition in bankruptcy. Such a conclusion defies common sense and reason and is at odds with the Supreme Court’s holding in
 
 Grogan. See
 
 498 U.S. at 284-85 n. 11, 111 S.Ct. at 658 n. 11. For these reasons, Docteroffs argument fails as to the first and fourth elements of the test.
 

 Next, Docteroff asserts that he did not actually litigate any issue in the previous lawsuit because the judgment was not a determination on the merits but was entered against him by default as a sanction for his bad-faith conduct in discovery. We reject Docteroffs contention. Docteroff had every opportunity to fully and fairly litigate any relevant issue in the district court in Washington where Wolstein sued him in the federal court, charging him with fraud in the diversion of progress payments on the construction of the Lady Iris. Docteroff simply elected not to comply with court orders. This is not a typical default judgment where a defendant neglects or elects not to participate in any manner because of the inconvenience of the forum selected by the plaintiffs, the expense associated with defending the lawsuit, or some other reason.
 
 See In re Bush
 
 62 F.3d 1319, 1324 (11th Cir.1995); 18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 4442, at 375 & n. 3 (1981). To the contrary, for several months, Docteroff participated extensively in the lawsuit. He filed an answer, noticed Wolstein’s deposition, engaged several lawyers, including local counsel, filed papers with the court, and corresponded with opposing counsel.
 
 See
 
 62 F.3d at 1324 (noting defendant’s participation in lawsuit which ultimately ended with default judgment entered against him as sanction). Apparently, Docteroff realized the meritlessness of his position and decided to frustrate orderly litigation by willfully obstructing discovery.
 

 We do not hesitate in holding that a party such as Docteroff, who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application.
 
 See In re Daily,
 
 47 F.3d 365, 368 (9th Cir.1995). In doing so, we join with Ninth and Eleventh Circuit courts of appeals in holding that, under these circumstances, the actual litigation requirement is met.
 
 See Bush,
 
 62 F.3d at 1324;
 
 In re Daily,
 
 47 F.3d at 368-69. To hold otherwise would encourage behavior similar to Docteroffs and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple. We reject such a result.
 

 Docteroff next contends that the liability judgment in the Washington case does not satisfy the finality requirement because it is not appealable. This argument is unpersuasive for two reasons. First, applica
 
 *216
 
 tion of collateral estoppel does not require the type of finality urged by Docteroff.
 
 In re Brown,
 
 951 F.2d 564, 569 (3d Cir.1991);
 
 see also Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency,
 
 126 F.3d 461, 474 n. 11 (3d Cir.1997); 18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal practice and Procedure § 4434. Rather, “for purposes of issue preclusion ... ‘final judgment’ includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.” Restatement (Second) of Judgments § 13 (1982) (cited with approval in
 
 Brown
 
 and
 
 Hawksbill Sea Turtle).
 
 The Washington court’s judgment is sufficiently final. Indeed, there is nothing which would even’suggest that that court has any intention of revisiting the issue of liability, that its findings are unreliable, that Doc-teroff did not have sufficient opportunity to be heard before the court entered judgment, or that the Washington court gave insufficient consideration to the issue of liability.
 
 See Brown,
 
 951 F.2d at 569-70 (judgment sufficiently final if parties heard, reasoned opinion filed, and finality sufficiently' firm and reliable). Without question, the record establishes that the Washington court adequately considered all the relevant issues. Judge Coughenour wrote a thorough and thoughtful opinion in which he carefully analyzed whether default judgment was an appropriate sanction. Further, he considered all the appropriate factors, meticulously detailed Doeteroffis outrageous and contemptuous conduct, and weighed the public’s and litigants’ interests in deciding cases on the merits against deterring the future abuses.
 

 Second, Docteroff, himself — and no one else — prevented the judgment from becoming final. By filing a Chapter 11 bankruptcy petition and invoking the automatic stay, he prevented the district court from holding a trial on damages and entering final judgment. Permitting him to relitigate the issue in light of his original rejection of a full and fair opportunity to litigate would implicitly endorse his abuse of the judicial process.
 

 Docteroff further argues that collateral es-toppel should not apply because the bankruptcy court did not hold a hearing and make any specific findings regarding the application of the doctrine. This argument is hollow. Docteroff points to no evidence that the district court or bankruptcy court ignored in their findings.
 

 B.
 

 Next, Docteroff contends that even if collateral estoppel applies, the facts pled in the complaint filed in the Washington court do not establish all of the elements of fraud because they do not indicate that he affirmatively misled the plaintiffs, but only that- he
 
 failed
 
 to disclose material information.
 
 [2]
 
 We disagree. A debt is not discharge-able under 11 U.S.C. § 523(a)(2)(A) if it is obtained by “actual fraud.” Paragraph 28 of the complaint filed in the Washington court alleges that Docteroff improperly faded to disclose material facts; specifically that he had.a duty to disclose the use to which the progress payments were being put and the effect of the diversion of Burger’s funds on its financial health and that he failed to discharge that duty. Docteroff fails to recognize that a finding of fraud does not require an affirmative statement by him of his purpose in the .diversion and may be predicated on a failure to disclose that material fact. As the district court in New Jersey properly noted, “[bankruptcy courts have overwhelmingly held that a debtor’s silence regarding material fact can constitute a false representation actionable under section 523(a)(2)(A).”
 
 In re Van Horne,
 
 823 F.2d 1285, 1288 (8th Cir.1987) (collecting cases). We agree with those courts.
 

 The district court and the bankruptcy court also concluded that the debt was not dischargeable pursuant to 11 U.S.C. § 523(a)(4) because Docteroff obtained it while he owed a fiduciary duty to Wolstein
 
 *217
 
 and by embezzling funds from Burger and Wolstein. We agree. The complaint alleged that the diversion of the progress payments “left Burger .... unable to conduct its operations and meet its obligations to construct the Lady Iris.” (Comp-¶ 80). This established that Burger was insolvent, and that it was unable to pay its bills. A corporation is insolvent when it is unable to meet its obligations in the ordinary course of business.
 
 Northern State Constr. Co. v. Robbins,
 
 76 Wash.2d 357, 457 P.2d 187, 191 (1969). Thus, while there is nothing in the record establishing that Docteroff was a director or officer of Burger, according to the complaint filed in the Washington case, he was a director and shareholder of Tacoma, which effectively owned Burger. For that reason, he- owed a fiduciary duty to Burger’s creditors. When Burger became insolvent, Docteroffs evident control of Burger enabled him to cause the diversion of the progress payments and permit him to violate a fiduciary duty he owed to Burger’s creditors.
 
 Cf In re Teltronics Services, Inc.,
 
 29 B.R. 139, 170 (Bankr.E.D.N.Y.1983).
 

 Hence, a transfer of funds from Burger when it was insolvent to pay a debt to Docteroff violated Docteroffs fiduciary duty to Burger’s creditors, including Wolstein. We also note that the complaint charged embezzlement within the meaning of § 523(a)(4). Docteroff obtained money from Burger that Burger had obtained from Wolstein lawfully, namely to be used to build the Lady Iris. Docteroff then purloined that money for an improper purpose, his own personal use.
 
 See State v. Ager,
 
 128 Wash.2d 85, 904 P.2d 715, 718 (1995) (listing elements of embezzlement). Also, there can be no doubt that Docteroff inflicted a willful injury on the plaintiffs.
 
 See
 
 11 U.S.C. § 523(a)(6). Simply stated, the complaint alleged that Docteroff intentionally disregarded his duty to disclose his diversion of the progress payments for his personal use and that this diversion impaired Burger’s financial ability to operate with the result being Burger’s inability to construct the Lady Iris.
 

 C.
 

 Finally, Docteroff alleges that the complaint failed to comply with Federal Rule of Civil Procedure 9(b) which requires that allegations of fraud be pleaded “with particularity.” In the bankruptcy court, he did not file a motion to dismiss on this ground or make this objection in his answer. He, therefore, waived this argument.
 

 Even if we considered Docteroffs argument, we find that the complaint meets the requirement of Rule 9(b). The purpose of the rule is to allow a defendant to meaningfully respond to a complaint.
 
 See Schwartz v. Celestial Seasonings, Inc.,
 
 124 F.3d 1246, 1252 (10th Cir.1997). The complaint in this case alleges that Docteroff intentionally disregarded his duty to disclose that he was diverting progress payments Wolstein made to Burger and that those diversions adversely affected Burger’s financial condition and specifically states the time when those diversions occurred. There can be no doubt that these allegations put Docteroff on sufficient notice to respond to the complaint because they specifically identify the fraudulent conduct, his role in it, and the time the fraud occurred. Significantly, Docteroff does not argue that he was unaware of the events described in the complaint; indeed, the complaint’s allegations were sufficient to allow him to file an answer. Further, the circumstances of this case establish the frivolousness of Docteroffs argument. The incidents described in the complaint were well known to all the parties and had been the subject of approximately 18 months of litigation in Washington.
 

 III.
 

 For the foregoing reasons, the January 21, 1997 order of the United States District Court for the District of New Jersey is affirmed. Costs taxed against the Appellant.
 

 [1]
 

 . The bankruptcy court had subject-matter jurisdiction pursuant to 28 U.S.C: §§ 157(b)(2)(A), (b)(2)(I), and 1334. The district court had appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1). This Court has appellate jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291.
 

 [2]
 

 . Whether the plaintiffs established a cause of action in the previous lawsuit, which was brought in the Washington court pursuant to diversity jurisdiction, is governed by the state law that governed that action, apparently Washington state law.
 
 See Grogan,
 
 498 U.S. at 283, 111 S.Ct. at 657 (citing
 
 Vanston Bondholders Protective Comm. v. Green,
 
 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946));
 
 Heiser,
 
 327 U.S. at 732, 66 S.Ct. at 855-56.