In re Clifford K. PARKER, d/b/a Retrovest and Power Mechanical, Debtor.

Lincoln Trust Custodian FBO Wendell William Mercer No. 61067486 (Successor to Providence Trust Company Trustee) and Wendell William Mercer, Plaintiffs,

v.

Clifford K. Parker, d/b/a Retrovest and Power Mechanical, Defendant.

No. 3:CV–00–0032.

United States District Court, M.D. Pennsylvania.

June 30, 2000.

**514**

Brian E. Manning, Doran and Nowalis, Wilkes–Barre, PA, for Clifford K. Parker.

Joseph J. Murray, Wilkes Barre, PA, Joseph F. Moor, Jackson, WY, for Lincoln Trust.

Mark J. Conway, Scranton, PA, trustee.

### MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition is an appeal of Bankruptcy Judge John J. Thomas' opinion that grants the summary judgment motion of Plaintiffs Lincoln Trust and Wendell William Mercer (hereinafter "plaintiffs") concerning the dischargeability of certain debts of Clifford K. Parker (hereinafter "debtor"), pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). The debtor filed his appeal of the decision of the bankruptcy judge on January 6, 2000, pursuant to 28 U.S.C. § 158(a)(1), in the United States District Court for the Middle District of Pennsylvania. The appellees in this matter are the plaintiffs. The matter is now ripe for disposition. Upon consideration of the underlying bankruptcy opinion, and the supporting and opposing briefs, and for the reasons set forth below, the appeal will be granted, the bankruptcy court opinion reversed, and the motion for summary judgment denied.

### Background

On December 18, 1996, a Wyoming state trial court entered a judgment against the debtor in the total amount of $1,336,504.85, including $500,000.00 in punitive damages, based upon claims against the debtor for, *inter alia,* breach of contract, fraud, and negligence. The judgment was entered as a result of the debtor's failure to comply with discovery requests, including a deposition scheduled for October 1996, and his failure to respond to plaintiffs' motion for a default judgment, issued November 4, 1996 and granted November 15, 1996. After a hearing at which the debtor did not participate, the Wyoming court assessed damages in the above amount on December 18, 1996. The debtor had been ordered, on July 14, 1996, to provide the court with updated addresses for purpose of service. Despite this admonition, the debtor failed to apprise the court of his move to Pennsylvania on September 12, 1996. Nevertheless, debtor reported his change of address to the post office.[1] The debtor contends that the motion for default, as well as the October notice of deposition, reached him after the default had been entered as a result of the faulty address. He avers he had no knowledge that he could move for reconsideration of the default or that he could contest the matter at the damages phase of the proceeding. The debtor filed for bankruptcy on July 30, 1997. On November 4, 1997, the plaintiffs initiated an adversary proceeding by filing a complaint in the bankruptcy court, pursuant to 11 U.S.C. § 523(a)(2), (4) and (6), objecting to the dischargeability of the debt incurred pursuant to the Wyoming court judgment. The provisions of 11 U.S.C. § 523(a)(2), (4) and (6) state, in pertinent part:

(a) A discharge . . . under this title does not discharge an individual debtor from any debt—

---

1. The debtor claims, in his affidavit, that he did inform a partner of the plaintiffs' attorneys, with whom he was dealing on an unrelated matter, regarding the address change, although he has no knowledge of whether the plaintiffs' attorney himself was specifically notified.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud . . .

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity [or]

. . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Upon the debtor's denials of the allegations contained in the plaintiffs' complaint, the plaintiffs filed a motion for summary judgment on the issue, which the bankruptcy court granted, holding that the issue of whether the debt was incurred through fraud had already been properly adjudicated in the Wyoming court, obviating the need for relitigation of the issue in bankruptcy court. The debtor has since appealed the bankruptcy opinion to this court.

### Standard of Review

■ A district court, serving in its appellate function with respect to a bankruptcy proceeding pursuant to 28 U.S.C. § 158(a)(1), and reviewing a bankruptcy opinion on a matter of summary judgment, exercises plenary review with respect to both factual findings and legal conclusions. *Rosen v. Bezner,* 996 F.2d 1527, 1530 (3d Cir.1993). Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Bankr.R.P. 7056. In reviewing a motion for summary judgment, all facts are to be regarded in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The initial burden of showing the absence of a material issue of fact lies with the moving party. *J.F. Feeser, Inc. v. Serv–A–Por-*

*tion, Inc.,* 909 F.2d 1524, 1531 (3d Cir. 1990).

### Discussion

■ Preliminarily, the plaintiffs urge that this appeal be quashed on the ground that the debtor failed to comply with Bankruptcy Rule 8006, which requires that a party appealing to the district court file a "statement of issues to be presented" on appeal and a designation of record within ten days of the bankruptcy court order. Fed.R.Bankr.P. 8006. The rule is designed "to assure that the district court is fully advised as to the contentions of the party on appeal from the bankruptcy court." *In re Trans World Airlines, Inc.,* 145 F.3d 124, 132 (3d Cir.1998). An argument may be deemed waived if a party fails to comply with this rule, at the discretion of the district court. *Cf. id.* at 132 (holding that transgressions of Bankruptcy Rule 8010, requiring that briefs contain a statement of issues, may result in discretionary sanctions by the district court). Courts are reluctant to impose severe sanctions where there is an extremely tight filing deadline. *Cf. Jewelcor Inc. v. Asia Commercial Co.,* 11 F.3d 394, 398 (3d Cir.1993) (holding that error by court docket clerk delaying service of relevant documents excused party's tardy filing of brief). Several circuits have held dismissal is an extreme step, to be taken only under limited circumstances, such as bad faith or prejudice. *See In re SPR Corp.,* 45 F.3d 70, 72 (4th Cir.1995); *Fitzsimmons v. Nolden,* 920 F.2d 1468, 1472 (9th Cir.1990). Here, there is no showing of bad faith; in fact the debtor largely complied with Rule 8006 by filing the designation of the record. Furthermore, the sole issue on appeal before this court was readily apparent to the parties, given that the summary judgment entailed a single disputed issue. Thus, even absent a statement of the issues, no parties to this matter were prejudiced. In view of these considerations, the debtor should not be penalized.

The doctrine of collateral estoppel[2] will bar claims of dischargeability in bankruptcy court where the issue of fraudulently incurred debt has previously been litigated. *See Grogan v. Garner,* 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The underlying Wyoming judgment, if collaterally binding, arguably satisfies the nondischargeability requirements of the Bankruptcy Code inasmuch as the Wyoming judgment springs from instances of fraud.[3] *See* 11 U.S.C. § 523(a); *Grogan v. Garner,* 498 U.S. at 290, 111 S.Ct. 654 ("State court judgments sounding in fraud are exempt from discharge in bankruptcy."). To determine whether the doctrine applies in a bankruptcy case, one must examine the collateral estoppel criteria set forth within the state of the initial judgment. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). *See also In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation* 134 F.3d 133, 141–42 (3d Cir.1998).[4] A state's own courts are presumed competent to define that state's laws; therefore, one must look first to state court precedent to determine applicability of collateral estoppel. *Kremer,* 456 U.S. at 478, 102 S.Ct. 1883. In *Tenorio v. State ex rel. Wyoming Workers' Compensation Div.,* 931 P.2d 234, 238–39 (Wyo.1997), the Wyoming Supreme Court set forth the following four factors to consider for determining the proper application of collateral estoppel: (1) whether the factual issues decided in the prior adjudication were identical with the issues raised in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in a prior proceeding. Inasmuch as the debtor concedes factors one and three are present in this case, the only factors currently at issue are two and four.

Wyoming's supreme court has interpreted its collateral estoppel doctrine to permit the relitigation of issues previously forfeited on procedural grounds where the application of collateral estoppel would be contrary to public policy. *See State ex rel. Wyo. Workers' Safety and Compensation Div. v. Jackson,* 994 P.2d 320, 323 (Wyo. 1999). Therein, a workers' compensation claimant filed an objection to a workers' compensation ruling three days late, and thus defaulted her right to recover expenses for ankle surgery. In a subsequent claim for total disability benefits, however, the claimant was permitted to reintroduce evidence concerning the compensability of the ankle injury, notwithstanding the prior default ruling that the injury was not covered. The court thus departed from a strict application of the above collateral estoppel factors, holding that "an uncontested final determination . . . will not be given collateral estoppel effect in subsequent proceedings," where the Wyoming legislature did not intend prior decisions to have collateral effect in subsequent workers' compensation proceedings. *Id.* at 323. *See also Lawrence–Allison and Associates West v. Archer,* 767 P.2d 989, 997 (1989)

2. Also known as issue preclusion, collateral estoppel prohibits the relitigation of previously adjudicated issues. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

3. Note that the issue of whether the full amount of the Wyoming judgment, including punitive damages, "sound[s] in fraud," *Grogan v. Garner,* 498 U.S. at 290, 111 S.Ct. 654, although addressed to the bankruptcy court, has not specifically been raised in the instant appeal. This court will endeavor to address only the issues raised and briefed by the parties.

4. The Full Faith and Credit Clause mandates that the rules of the state where the judgment was entered be followed to determine its collateral application, assuming the judgment rendered in that state conformed with minimal constitutional due process. *Kremer,* 456 U.S. at 482, 102 S.Ct. 1883.

(noting that "[d]efault judgments are not favored in the law, and when possible, a case should be decided on its merits.").

■ Just as Wyoming courts examine legislative intent in interpreting collateral estoppel effect on Wyoming statutes, in addition they are likely to permit courts to take prudential notice of relevant federal court precedents and bankruptcy policy when applying collateral estoppel to federal bankruptcy statutes. *Cf. Matter of Shuler*, 722 F.2d 1253, 1256 (5th Cir.1984) (holding that a judge "must necessarily tailor his application of collateral estoppel to the circumstances of the case before him, consistent with its purposes and the countervailing intent of Congress"); *In re Graham*, 973 F.2d 1089, 1094–95 (3d Cir. 1992) (noting that dischargeability is within the province of the bankruptcy court, which should not abdicate its authority lightly).

■ The Third Circuit, in interpreting collateral estoppel doctrine through the lens of national bankruptcy policy, has invoked the doctrine sparingly where the underlying judgment was a procedural default. In *In re Docteroff*, 133 F.3d 210, 214 (3d Cir.1997), the court interpreted federal collateral estoppel doctrine, which substantially mirrors the doctrine of Wyoming.[5] The *Docteroff* court held that collateral estoppel is applicable only in instances where the underlying judgment was based on procedural default.[6] In that case, the debtor, Docteroff, contended that the outstanding judgment against him did not trigger collateral estoppel because his case was forfeited on procedural grounds and was not tried on its merits. *Id.* at 215. However, noting that "in the months following the filing of the complaint in the [underlying] case, Docteroff repeatedly and in bad faith refused to submit to properly noticed depositions or respond to numerous legitimate requests for the production of documents despite court orders and warnings . . . . [due to] willfulness and bad faith," the Third Circuit refused to countenance Docteroff's efforts "to frustrate orderly litigation · by willfully obstructing discovery." *Id.* at 215. Rather it held collateral estoppel barred Docteroff from receiving an "undeserved second bite at the apple," reasoning that a party "who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application." *Id.* at 215. *Docteroff* distinguished its fact pattern from the more typical default situation where the defendant simply neglected or elected not to participate because of the inconvenience of the forum, or the expense associated with defending a lawsuit, thereby suggesting a different outcome in such cases. *Id.* at 215.

The Bankruptcy Court found the *Docteroff* analysis apposite to the fact pattern

---

**5.** The federal collateral estoppel criteria are: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; (4) the determination must have been essential to the prior judgment. *Docteroff*, 133 F.3d at 214.

**6.** In the underlying defaulted case, efforts to schedule depositions of Docteroff and a codefendant began in March 1994, but Docteroff refused to agree to a date. The plaintiff eventually scheduled them for May, but Docteroff failed to appear. In late June, depositions were rescheduled for August, based on Docteroff's professed availability. After an abrupt declaration by Docteroff that he could not attend on the August dates, the court formal-

ized the rescheduling, and ordered his appearance on the August dates. Docteroff nonetheless failed to appear, and the only explanation he gave was that there was a scheduling conflict. At the eventual deposition in September, Docteroff offered only meager excuses for the absence. Moreover, documents requested in April were not produced until June, and even then, the documents produced were not sufficiently responsive to the request, and were accompanied by poor excuses as to the unavailability of the data. Significantly, Docteroff was represented by an attorney and pretended a desire to adjudicate the matter throughout the process. *Wolstein v. Bernardin*, 159 F.R.D. 546, 547–52 (W.D.Wash.1994).

in the instant case, inasmuch as both cases considered whether a procedural default could trigger the doctrine of collateral estoppel where the default resulted from disregard of discovery orders. *In re Parker*, 241 B.R. 366, 369 (Bankr.M.D.Pa.) The court specifically found that the debtor has offered no good excuse for his failure to update his address and that the debtor's course of conduct suggests willful ignorance of proper court procedure. *Id.* at 369. In support of its conclusion, the court notes the debtor's subsequent failure, upon learning of the default judgment, to seek appeal or reconsideration of the Wyoming judgment. *Id.* at 369. Under these circumstances, the court deemed Wyoming's collateral estoppel doctrine to apply.

However, *Docteroff* presents an exceptional rule, not to be applied rigidly in all instances of procedural default.[7] In the instant matter, the debtor urges that the facts in evidence, particularly given the deference shown the nonmoving party's construction of the facts in sum-

mary judgment, do not place this case within the ambit of the *Docteroff* rule. The second prong of the Wyoming test should not be deemed satisfied absent willful misconduct. Specifically, the debtor in this case argues that the lower court erred by concluding the debtor's conduct rose to the level of deliberate frustration of the Wyoming judicial process, in view of several factors stated in the debtor's affidavit: (1) only twelve days passed between issuance of an order directing the debtor to respond to the plaintiffs' motion for sanctions of default, and the entry of a default order in November 1996; (2) the debtor avers he informed a partner in the plaintiffs' attorney's firm regarding his change of address upon his move to Pennsylvania; and (3) at time of default, the debtor was unrepresented by counsel. Thus, viewing the record in the manner most generous to the debtor, it appears he may have innocently missed a deadline, resulting in a defaulted claim, and naively believed he had no further recourse.[8] Moreover, this

7. For further insight into why *Docteroff* is an exceptional case, compare *Matter of McMillan*, 579 F.2d 289, 293 (3d Cir.1978), which held that a procedurally defaulted state claim does not bar the litigation of dischargeability issues in bankruptcy court, because default judgments are disfavored, and to discourage creditors rushing into state courts to seek default judgments based on fraud in anticipation of bankruptcy litigation.

8. Here the plaintiffs make several contentions which might support an inference of willful neglect, but which are largely unsubstantiated by the record before this court. To wit, the plaintiffs argue that the debtor is a seasoned litigator with numerous pending Wyoming suits, and no mere babe-in-the-woods, who might innocently miss court deadlines and misconstrue court procedures. True, the plaintiffs' brief to the bankruptcy court excerpts deposition transcripts wherein the debtor alludes to involvement in other Wyoming litigation, but it does not explain the nature and extent of the debtor's involvement, nor whether he was represented by counsel throughout. The alleged discovery abuses by the debtor are troublesome. But they appear to amount to only two major infractions—a failure to produce documents in August 1996, and a failure to appear for a deposition in

October 1996 (although the latter event occurred in the shadow of initial document requests made in June, a motion to compel a response to the outstanding discovery requests made in July, and a court order compelling document production entered in August 1996). It is noteworthy that, according to the debtor's affidavit, his attorney left the case soon after the March 1996 deposition of a bank official, because of the debtor's inability to pay him. The plaintiffs have failed to produce evidence to prove their assertion that the debtor willfully refused or ignored the proffered assistance of the Wyoming court and opposing counsel to assist him in the absence of his own attorney. Lack of counsel may well excuse much of the debtor's conduct throughout this matter. And, he made some efforts to produce the required documents. Moreover, the deposition was scheduled and the default sanctions threatened and imposed after the Pennsylvania address change, thus explaining the debtor's failure to respond. It is also unclear whether the notice of default judgment, when it finally reached the debtor, contained adequate notice for a layperson to comprehend his right of appeal or to present evidence regarding damages, which might explain his professed belief that he had no recourse after the notice of default.

default, imposing a liability of over one million dollars upon the debtor, is likely to be extremely prejudicial if deemed binding in this bankruptcy proceeding. *Cf. Lawrence–Allison and Associates West,* 767 P.2d at 997 (Wyo.1989) (noting the due process to be accorded a litigant should be commensurate with the property interests at stake).

Although there exists law in other circuits which have held default judgments—under a wide range of circumstances—trigger collateral estoppel, such cases have typically relied on stricter state collateral estoppel doctrines. *See, e.g., In re Calvert,* 105 F.3d 315, 321–22 (6th Cir.1997) (finding that clear state doctrine giving collateral estoppel effect to default judgment trumps federal policy considerations to the contrary). Wyoming has disavowed such a stringent collateral application of default judgments, in the presence of countervailing statutory directives. *See Jackson,* 994 P.2d at 323. Also, the Third Circuit, in applying federal collateral estoppel, implicitly rejected a *per se* application of collateral estoppel to default judgments. In the *Docteroff* case, the Third Circuit cited to authority from other circuits where extreme abuse leading to the default judgment was a precondition of collateral estoppel: In *In re Daily,* 47 F.3d 365, 367 (9th Cir.1995), discovery was pressed by plaintiff for two full years to no avail; and in *In re Bush,* 62 F.3d 1319, 1324 (11th Cir.1995), "dilatory and deliberately obstructive conduct" was at issue.

Plaintiffs argue that the debtor's participation at the inception of the Wyoming case, and his initial representation by counsel trigger the collateral application of a default judgment. However, *In re Jordana,* 232 B.R. 469, 478 (10th Cir. BAP 1999), cited by the plaintiffs for this proposition, also notes the presence of aggravating factors, such as bad faith, in addition to the defendant's initial participation in the suit. *In re Calvert,* 105 F.3d at 322 (6th Cir.1997), struggled to articulate a "principled distinction between cases where a defendant participates in part in defense of the state court suit and cases where the defendant does not participate at all." Moreover, in *In re Wald,* 208 B.R. 516, 553 (Bankr.N.D.Ala.1997), the court noted the tension among the various court holdings as to when default judgments should be subject to collateral attack, and questioned whether "active participation alone or abuse of process alone, may take a case outside of the general rule [against collateral application of default judgments]." *Docteroff* suggests that the Third Circuit will rely upon the abuse of process criterion, and will consider the extent of participation in a case only as one factor among many from which to infer obstruction of process. *In re Docteroff,* 133 F.3d at 215.

It is also argued that the hearing on damages subsequent to the default judgment satisfies the requirement that the case be litigated on its merits. *See, e.g., In the Matter of Caton,* 157 F.3d 1026, 1029 (5th Cir.1998). The law of this circuit, however, gives no credence to a non-adversary proceeding, wherein one side alone presents its case to the judge. Rather, *Docteroff* punished tactics which tarnished the judicial process and which called into question the veracity of Docteroff's defense, but did not suggest that a unilateral court proceeding would be sufficient to vindicate the merits of the plaintiff's case. *See In re Docteroff,* 133 F.3d at 215.

In the present case, there is no evidence that the notice of default judgment submitted to the debtor apprised him of his right of appeal, nor that the debtor was a seasoned litigator, who should have known about proper court procedure. Nor is there evidence from which to infer willful disregard for the Wyoming court process, to rebut the direct statements of the debtor, via his affidavit, that his failure to comport with Wyoming court procedure was entirely innocent. Although some facts in this case superficially resemble those of *Docteroff,* here the debtor lacked

**520**

assistance of counsel during many of the critical events, there were fewer discovery abuses at issue, the debtor did not take frivolous actions designed to frustrate the process, such as agreeing and later reneging on deposition dates, and the debtor offered a plausible explanation for missing his deposition, unlike Docteroff. Bad faith is the hallmark of the *Docteroff* decision, and it is not clearly present here.

However, the bankruptcy court is certainly justified in viewing the actions of the debtor with suspicion. The debtor was clearly irresponsible by not reporting to the scheduled deposition, and failing to update his address with the court.[9] Additionally, some of his explanations for his behavior—for example that he did not know he could call the court directly to respond to the notice of default—ring hollow. But, surveying the record in a light most favorable to the nonmoving party, the debtor's actions may have been born of sheer guilelessness. Or he may simply have been unable to foot mounting legal bills, and the inconvenience of a *pro se* defense, which would explain why he initially pursued a defense with counsel, but later balked. *See In re Barzegar,* 189 B.R. 864, 869 (Bankr.N.D.Ga.1995) (suggesting that motives outside sheer contumacy, such as financial considerations, do not bar collateral attack on a default judgment). *See also* 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* §§ 4442 (1981) (noting that a default judgment should not support issue preclusion because "the essential foundations of issue preclusion are lacking for want of actual litigation or actual decision of anything ... [and because] a defendant may suffer a default for many valid reasons other than the merits of the plaintiff's claim").

To have an absolute rule forcing debtors to fully litigate their cases in state court, thwarts bankruptcy policy by compelling those already encumbered with debt to expend additional resources defending state court claims. Nonetheless, policy reasons do exist which favor giving state court judgments collateral estoppel effect. *See In the Matter of the Paternity of SDM,* 882 P.2d 1217, 1220–21 (Wyo.1994). ("[Collateral estoppel] doctrines are founded upon the interest held by society in having differences conclusively resolved in a single action thereby avoiding the vexation and expense which are associated with piecemeal litigation .... [and] promote the reliance by citizens of the state upon courts to settle their disputes and they conserve judicial resources."). However, hesitancy to bind a party to a decision that has not been made on its merits, frequently outweighs these policy concerns, and militates against the application of collateral estoppel. *See Matter of McMillan,* 579 F.2d at 293.

Here, there is at least the plausible inference that debtor departed Wyoming, not to evade the court because he thought he would lose the case, but because of financial difficulties—in his affidavit he states he just lost his job—or other matters extraneous to the merits of the case. Under either circumstance, ignorance or financial duress, sound bankruptcy policy militates against the application of collateral estoppel with regard to the dischargeability of the debt. Also noteworthy here is the amount of the debt. Equitable considerations inform this court's assessment of collateral estoppel, and it would seem patently unfair to bind a debtor to such an unwieldy judgment, absent clear evidence of bad faith.

9. The plaintiffs seek to impute a darker motive to the debtor's frequent travels—the debtor admits to traveling to Colorado just before the Pennsylvania move; and it is suggested that the court's order for the debtor to update his address with the court was out of concern for his elusiveness. However, again viewing the matter in a light most favorable to the debtor, his assertion that he had family in Pennsylvania posits an entirely innocent motive for his move. Moreover, his claim that he had his mail forwarded by the post office, and his claim that he told an attorney at the plaintiffs' attorney's firm about the move, while perhaps inadequate measures, negate a finding of bad faith.

Thus, summary judgment is inappropriate under these circumstances, where the evidence suggests the possibility of innocent indiscretion on the part of the debtor, and where there is no legal support for the *per se* collateral application of default judgments. "A determination of whether the [collateral estoppel] standards are met should be made in the first instance by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law." *Matter of Ross*, 602 F.2d 604, 608 (3d Cir.1979). *Cf. Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir. 1986) (holding that, where there exist questions of motive which are dispositive of the dischargeability issue, the bankruptcy court should conduct a hearing to develop the factual record necessary to infer a party's mental state). A finding that collateral estoppel should apply here is inappropriate absent fact-finding by the bankruptcy court which would convincingly indicate more egregious misconduct to place the instant case within the ambit of the *Docteroff* exception. *See In re Braen*, 900 F.2d 621, 628 (3d Cir.1990) (suggesting that where the evidence does not support a summary judgment motion, a hearing may be conducted to determine whether collateral estoppel should apply). Absent such evidence, the bankruptcy court should exercise its statutory authority to try the issue of dischargeability *de novo*. An appropriate order follows.