

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2008

# In re: Hechinger Inv

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4960

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"In re: Hechinger Inv " (2008). *2008 Decisions*. Paper 1215.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1215

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4960

IN RE: HECHINGER INVESTMENT COMPANY
OF DELAWARE, INC., et al.

Debtors

LIQUIDATION TRUST OF HECHINGER INVESTMENT
COMPANY OF DELAWARE, INC.,

Appellant

v.

*FLEET RETAIL FINANCE GROUP; CHASE; CHASE
MANHATTAN BANK N.A.; BACK BAY CAPITAL
FUNDING LLC, each individually and as agents
for various banks party to credit agreements
described herein; JOHN W. HECHINGER; *GENERAL
ELECTRIC CAPITAL CORPORATION; LEONARD GREEN &
PARTNERS, L.P.; GREEN EQUITY INVESTORS II, L.P.;
JOHN W. HECHINGER, JR.; S. ROSS HECHINGER; ANN
D. JORDAN; ROBERT S. PARKER; MELVIN A. WILMORE;
ALAN J. ZAKON; KENNETH J. CORT; W. CLARK MCCLELLAND;
JUNE R. HECHINGER; NANCY HECHINGER LOWE; SALLY
HECHINGER RUDOY; CATHERINE S. ENGLAND; RICHARD ENGLAND,
JR.; JUNE L.P.; LOIS ASSOCIATES L.P.; JARSAN ASSOCIATES LP;

LEONARD GREEN & PARTNERS, L.P.;
GREEN EQUITY INVESTORS II, L.P.;
Third-Party Plaintiffs

v.

KMART CORPORATION,
Third Party Defendant

(Delaware Civil No. 00-cv-00840)

IN RE: HECHINGER INVESTMENT COMPANY
OF DELAWARE, INC., et al.,
Debtors

LIQUIDATION TRUST OF HECHINGER INVESTMENT
COMPANY OF DELAWARE, INC.,
Appellant

v.

LEONARD GREEN & PARTNERS L.P.

(Delaware Civil No. 02-cv-00522)

IN RE: HECHINGER INVESTMENT COMPANY
OF DELAWARE, INC., et al.,
Debtors

LIQUIDATION TRUST OF HECHINGER INVESTMENT
COMPANY OF DELAWARE, INC.,
Appellant

(Delaware Civil No. 02-cv-00523)

*(Dismissed Per Court Order dated 10/23/06)

———————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action Nos. 00-cv-00840/02-cv-00522/3)
District Judge: Honorable Sue L. Robinson

———————

Argued April 14, 2008

Before: SCIRICA, <u>Chief Judge</u>, AMBRO and FISHER, <u>Circuit Judges</u>

(Opinion filed: May 19, 2008)

Michael F. Bonkowski, Esquire
Mark Minuti, Esquire
Saul Ewing
222 Delaware Avenue
P.O. Box 1266, Suite 1200
Wilmington, DE 19899-0000

David M. Friedman, Esquire
David E. Ross, Esquire
Howard W. Schub, Esquire (Argued)
Andrew K. Glenn, Esquire
Marvin C. Peguese, Esquire
Kasowitz, Benson, Torres & Friedman
1633 Broadway, 21st Floor
New York, NY 10019-0000

      Counsel for Appellant

Richard W. Clary, Esquire
Elizabeth L. Grayer, Esquire (Argued)
Cravath, Swaine & Moore
825 Eighth Avenue, Worldwide Plaza
New York, NY   10019-0000

John L. Reed, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 14th Floor
Wilmington, DE 19801-0000

Anthony Castanares, Esquire
Stephen M. Ray, Esquire (Argued)
Gina M. Najolia, Esquire
Stutman, Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067-0000

3

Regina A. Iorii, Esquire
Werb & Sullivan
300 Delaware Avenue
13th Floor, P.O. Box 25046
Wilmington, DE 19899-0000

Counsel for Appellee

---

OPINION

---

AMBRO, <u>Circuit Judge</u>

We decide whether the District Court properly granted summary judgment in favor

of Chase Manhattan Bank ("Chase"), Leonard Green & Partners ("LGP"), and Green

Equity Investors II ("GEI"), on the claim of the Liquidation Trust of Hechinger

Investment Company of Delaware (the "Trust") that certain transfers of security interests

to Chase and for the benefit of the Green entities were constructively fraudulent. We also

decide whether the District Court properly granted summary judgment in favor of LGP on

the Trust's claim that it aided and abetted certain former Hechinger directors' breaches of

fiduciary duty.

We affirm both grants of summary judgment.[1]

## I.    Facts and Procedural History

Because we write primarily for the parties, we relate only the facts necessary to the

---

[1] We have jurisdiction under 28 U.S.C. § 1291. We review grants of summary
judgment *de novo*. *Boyle v. County of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

4

disposition of this case. Hechinger Investment Company of Delaware ("Hechinger"), the debtor, is the product of a leveraged buyout ("LBO") structured by LGP for its affiliate GEI. That transaction merged two underperforming home improvement retail chains—Builders Square, formerly a subsidiary of K-Mart Corporation, and Hechinger. GEI, through a subsidiary, acquired both Hechinger and Builders Square. It financed the transaction with some of its own capital, but also with a substantial amount of capital borrowed through Chase[2] and secured by the merged entity's assets. To acquire Hechinger, a GEI subsidiary paid the Hechinger shareholders $2.375 per share. Twenty months after the merger, the merged entity petitioned for relief under Chapter 11 of the Bankruptcy Code.

In this adversary proceeding, the Trust, standing in the shoes of the debtor, alleged that security interests in Hechinger's assets were conveyed to Chase, and for the benefit of the Green entities, for less than reasonably equivalent value. It further alleged that LGP aided and abetted certain former Hechinger directors in breaching their fiduciary duties to the corporation. The directors allegedly breached their duties by approving the buyout of Hechinger stock despite their conflicts of interest, and despite the transaction's lack of "entire fairness." LGP purportedly aided and abetted this breach by creating or exploiting the directors' conflicts of interest.

---

[2] Chase acted as an agent for itself and a syndicate of other lenders.

## II.  Constructive fraud

Conveyances are voidable as constructively fraudulent if the debtor does not receive "reasonably equivalent value" in return for the transfer or obligations conveyed. 11 U.S.C. § 548(a)(1)(B).  Here, the District Court ruled, as to the tangible assets acquired (*i.e.*, the Builders Square assets), that it had already found that those net assets were worth $260 million in a prior adversary proceeding involving Hechinger's corporate bondholders.  While the Court did not invoke explicitly the law of issue preclusion, it is clear from the Court's opinion that it was convinced that the question of Builders Square's value had already been decided.

"For a party to be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). [3]

It is clear that valuation was actually litigated in the bondholder proceeding, the issue was determined by a final judgment, and the valuation was essential to the judgment in the bondholder proceeding.  Thus, the argument here centers on the first prong of the test: whether the two valuation issues—value for purposes of the bondholder proceeding,

---

[3] These are the elements of federal issue preclusion, which apply, as here, when the prior judgment was rendered in a federal court.

6

and value for purposes of determining reasonably equivalent value—are the same.

In the bondholder litigation, the question before the Court was whether $153 million of the security interests that Chase took in the merged entity's assets fell within a purchase-money exception to a negative pledge clause in an agreement between Hechinger and its unsecured corporate bondholders. According to the District Court, the negative pledge clause was not breached so long as the $153 million could reasonably be characterized as a fair purchase price for the Builders Square assets and liabilities. *In re Hechinger Inv. Co. of Del.* (*Hechinger I*), Civ. No. 00-973-SLR, 2004 WL 724960, at ¶21, *4. Following a three-day bench trial in which the Court heard testimony from both sides' experts, including the Trust's primary expert in this proceeding, it concluded that the most reliable measure of the value of the Builders Square net assets was Hechinger's post-merger valuation of $260 million, which accorded with purchase accounting rules under generally accepted accounting principles ("GAAP") and was audited by KPMG. *Id.* at ¶30, *6.

In the proceeding now before us, the Trust contends that the valuation issue in the prior bondholder proceeding was different. It calls the $260 million figure a "book value," and argues that it was not determined to be Builders Square's fair market value. It is certainly true that there can be a substantial disconnect between book value and fair market value, *see JP Morgan Chase & Co. v. C.I.R.*, 485 F.3d 564, 569 (7th Cir. 2006) (affirming finding of fact that GAAP-sanctioned book value differed from fair market

7

value), but the question is whether book value was all the District Court determined in the

prior proceeding.

The bondholder proceeding, according to our opinion affirming the District Court,

sought to determine the fair market value of Builders Square—that is, the amount that a

willing buyer would pay, and a willing seller accept, in an arm's length transaction. We

characterized the question before the District Court as follows:

> [B]reach [of the negative pledge clause] was an impossibility absent a
> finding that the assets and liabilities of Builders Square at the time of the
> transaction were less than $153 million. The analysis, then, collapses to
> two fairly straightforward inquiries: (1) did the District Court make a
> finding of fact with respect to the valuation of Builders Square; and (2), if
> so, was that finding clearly erroneous?

*In re Hechinger Inv. Co. of Del.*, 147 Fed. Appx. 248, 251 (3d Cir. 2005) (not

precedential). We answered the first question in the affirmative, and characterized the

District Court's decision as follows:

> We . . . turn to the question of whether the District Court's valuation
> determination was clear error. It was not. "'Fair market value is the price
> at which the property would change hands between a willing buyer and a
> willing seller, neither being under any compulsion to buy or to sell and both
> having reasonable knowledge of relevant facts.'" *Amerada Hess Corp.,* 517
> F.2d at 83 (quoting *United States v. Cartwright,* 411 U.S. 546, 551, 93 S.Ct.
> 1713, 36 L.Ed.2d 528 (1973)) (internal quotation omitted). We have
> reviewed the evidentiary record and, in light of this definition, *we find no*
> *error in the District Court affording great weight to the contemporaneous*
> *1997 valuation made by Hechinger.* This valuation was confirmed by an
> outside auditor and was further corroborated by independent
> contemporaneous evidence in the record. This included the fact that (1)
> Hechinger and its counsel made multiple representations to Appellees'
> predecessors that the 1997 transaction had not breached the indenture's
> negative pledge clause; (2) Hechinger found the valuation sufficiently

8

reliable to submit it to the United States Securities and Exchange Commission for use in public filings; and (3) the Liquidation Trustee for Appellant, who was also both the former head of financial planning at Hechinger and its Chief Financial Officer, testified that he himself did not know of a breach of the negative pledge clause by Hechinger at any time, including during the 1997 transaction.

Similarly, *we find no error in the District Court's decision to remain unpersuaded by Appellant's claim that "$10 million in cash" constituted the fair market value of Builders Square in 1997.* Our review of the record shows that Appellant's purported $10 million valuation omits other non-cash consideration made in conjunction at the time, including (1) a thirty percent ownership in the company that would arise from the 1997 transaction, in the form of a warrant; (2) a subtenant in approximately 100 sites where a rental obligation would otherwise arise; and (3) a $10.7 million promissory note. While the value of these additional consideration components is not clear, they cast significant doubt upon Appellant's asserted valuation. For all of these reasons, we conclude that the District Court's valuation finding was manifestly correct, and therefore not clearly erroneous.

*Id*. at 252 (emphases added).

This language leaves no doubt that we read the District Court's bondholder opinion as deciding the question of Builders Square's fair market value by crediting the $260 million figure and rejecting the Trust's proffered figure of $10 million. Because the District Court made a finding of fact on the issue of fair market value, we must give that finding preclusive effect in this litigation.[4] Once we accept that the Builders Square

---

[4] In addition, we ruled as a matter of law that the District Court had made a finding of fact on the issue of fair market value. That ruling is now the law of the case, and we see no compelling reason to revisit it in this appeal. *See In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) (holding that our Court "will not reconsider questions that another panel has decided on a prior appeal in the same case" absent "extraordinary circumstances").

assets were worth $260 million at the time of the acquisition, the Trust's argument that the debtor did not receive reasonably equivalent value for its transfer of $127 million cannot succeed. Therefore, on this issue we affirm the District Court's grant of summary judgment in favor of Chase and the Green entities.

### III.    Aiding and Abetting a Breach of Fiduciary Duty

The Trust has alleged that LGP participated in the Hechinger directors' breach of fiduciary duty to the corporation. The theory of liability for the directors is that they breached their duty of loyalty by approving the buyout transaction despite most of them being conflicted. According to the Trust, the transaction did not satisfy the "entire fairness" standard that Delaware law requires of conflicted transactions. *See Weinberger v. UOP, Inc.*, 457 A.2d 701, 710–11 (Del. 1983) (explaining "entire fairness" standard). The directors have settled with the Trust, so the claim against them is no longer pending; only the aiding-and-abetting claim against LGP remains.

The District Court granted summary judgment in LGP's favor, ruling that because it had already determined in the bondholder litigation that the buyout and merger transaction was an arm's length deal, aiding-and-abetting liability was precluded as a matter of law. This conclusion is consistent with Delaware law, as the Delaware Supreme Court has noted that purely arm's length negotiations generally are inconsistent with the level of knowing participation required for aiding-and-abetting liability to attach. *Malpiede v. Townson*, 780 A.2d 1085, 1097-98 & n.84 (Del. 2001). When a party, such

10

as LGP, is merely negotiating a deal at arm's length—and not trying to create, exploit, or otherwise profit from fiduciaries' conflicts—it by definition is not knowingly participating in anything but a normal business transaction. *Id.*

Because we have some doubt as to whether the District Court gave preclusive effect to its recitation in the bondholder litigation that the transaction was negotiated at arm's length, we examine the record to see if there was a legitimate dispute on that issue. It bears emphasizing that the breach of fiduciary duty alleged in this case was the directors' approval of the buyout and merger transaction despite their interest in the transaction—namely that the transaction triggered the directors' receipt of substantial change-of-control benefits not available to regular shareholders. For liability to attach to LGP, the Trust must point to evidence that LGP actively participated in that breach by inducing, encouraging, or otherwise exploiting the directors' conflict. *Id*. at 1097–98. It has not done so.

In its brief, the Trust claims that LGP knew that Hechinger and Builders Square were in financial distress. Of course it did. The purpose of the transaction was to merge two entities that, because of their size, could not compete with Lowe's and Home Depot, and thereby create an entity large enough to compete. We fail to see how LGP's knowledge that it was merging two underperforming entities serves as evidence that LGP exploited the Hechinger directors' conflicts.

Next, the Trust argues that LGP knew of the benefits that the interested directors

11

would reap from the LBO transaction.  But merely knowing that a director or group of directors appears to be conflicted is not the same as actively inducing or exploiting that conflict.  Nowhere in its brief does the Trust cite evidence from which a jury could reasonably infer that LGP actively induced or encouraged the creation of those change-of-control benefits, used them to sell the transaction to the board, or in any other way actively used that conflict to its advantage.  We thus conclude that, on this record, summary judgment was appropriate.

*  *  *  *  *

Because the issue of Builders Square's fair market value was litigated and decided, we give preclusive effect to the District Court's prior finding that those assets were worth $260 million at the time of the LBO transaction.  This eliminates the dispute about reasonably equivalent value, and so we affirm the District Court's grant of summary judgment in Chase and the Green entities' favor on that issue.

In addition, we conclude that the record contains no evidence that LGP knowingly participated in the Hechinger directors' alleged breach of fiduciary duty, as nothing cited to us supports the allegation that LGP actively induced, encouraged, or exploited those directors' conflicts.  We likewise affirm the District Court's grant of summary judgment in LGP's favor on that issue.